Clint ADDISON, Jr., R.L. Agee, Kelly J. Ameigh, A.O. Anderson, Fred Atkins, R.L. Boger, Nicky Buchanan, C.R. Cranford, Jr., Nebraska Dover, William Edmond, M.E. Gardner, R.D. Gordon, R.W. Harris, Jack T. Hennan, Sidney M. Hemenway, Ralph Hogan, K.C. Holder, T.R. Hurlocker, J.L. Hutson, Ron C. Ivester, Phillip D. Johnston, D.E. Lewis, Robert W. Lopez, Hal K. Lowe, Dallas Lyalls, E.R. Matthews, James A. McGown, L.C. McWright, L.D. Mills, Terry S. Motes, N.C. Noah, E.E. Owen, Jeff Paige, John F. Reavis, John P. Reynolds, Mervin B. Rowe, G.P. Saylor, H. Gray Shamel, Jr., B.H. Shelton, B.C. Smith, Jack L. Smith, J.L. Smith, Stephen T. Synder, Edgar Sprouse, Ralph E. Stultz, Thomas B. Tally, Roger Thompson, S.G. Via, D.P. Watson, S.M. Watson, D.V. Wilson, Al L. Windsor, T.J. Wimbish, C.L. Wooten, Plaintiffs,

v.

PIEDMONT AVIATION, INC., U.S. Air, Inc. and International Association of Machinists and Aerospace Workers, Defendants.

No. C–89–69–WS.

United States District Court, M.D. North Carolina, Winston–Salem Division.

July 31, 1990.

Kate Mewhinney, B. Ervin Brown, II, J. Wilson Parker, Winston–Salem, N.C., for plaintiffs.

W.T. Cranfill, Jr., Charlotte, N.C., J. David James, Greensboro, N.C., Thomas E. Reinert, Jr., Washington, D.C., Betty Leach Hawkins, James T. Lloyd, Crystal Park Four, Arlington, Va., Martha Walfoort, Robert S. Clayman, Joseph Guerrieri, Jr., Washington, D.C., for defendants.

## MEMORANDUM OPINION

ERWIN, Chief Judge.

### Introduction

This matter is before the court upon defendants' motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The plaintiffs brought suit, pursuant to 45 U.S.C.A. § 152 *et seq.* (West 1986), alleging a breach of the duty of fair representation by the International Association of Machinist and Aerospace Workers (hereafter IAM) which occurred during the merger negotiations between USAIR, Piedmont Aviation, and IAM. The plaintiffs further allege that Piedmont Aviation and USAIR colluded and conspired with IAM, thereby breaching a collective bargaining agreement. After carefully considering the briefs presented and arguments of counsel during a hearing on May 30, 1990, the court grants summary judgment.

### Factual Background

Plaintiff Clint Addison and the other plaintiffs were all at one time employed by General Aviation, a separate division of Piedmont Aviation, as mechanics in the

fixed based division which sells, services, repairs, maintains, and hangers non-airline aircrafts. At some later time, varying with each plaintiff, the plaintiffs transferred to Piedmont Airlines, which conducts carrier operations, and lost the seniority that they had garnered with Piedmont Aviation for layoff purposes. When Piedmont Aviation merged with USAIR group, the plaintiffs expected that they would get credit for all of the years that they worked at Piedmont, irrespective of the division, but the plaintiffs only received seniority credit for the years they were at Piedmont Airlines.

For example, Mr. Addison began working for General Aviation on September 10, 1979. However, pursuant to the merger agreement between USAIR and Piedmont, Mr. Addison's seniority date for layoff purposes was April 9, 1985, which was the day he transferred from the general aviation division of Piedmont to its airline division. Another plaintiff, Mr. Fred Adkins, allegedly lost twenty-five years of seniority classification. Mr. Adkins began working at Piedmont's fixed based division on October 15, 1959 and transferred to the airline division on December 1, 1969; but pursuant to the merger, he was assigned a classification seniority date of April 4, 1984. The fifty-two other plaintiffs claim that their seniority rights were impaired by the failure of their union to represent their interests during the merger of Piedmont Airlines and the USAIR Group. The plaintiffs seek to hold USAIR and Piedmont Aviation liable for colluding with the IAM to frustrate their seniority expectations.

At the heart of this dispute is plaintiffs' claim that during the merger negotiations, their union refused to gain credit for the years each plaintiff worked in Piedmont's fixed based division while the union actively worked to preserve the seniority rights of other groups. The plaintiffs cite the actions taken by the union on behalf of mechanics employed by Empire Airlines during its merger with then Piedmont Aviation, which resulted in those employees maintaining their pre-existing seniority. The plaintiffs also direct the court's attention to the union's actions taken on behalf of the nondestructive testers. The plaintiffs maintain that the nondestructive testers' job description was afflicted with the same defects that denied plaintiffs' seniority for their years as fixed based employees of Piedmont, yet the IAM actively sought and procured seniority for the entire duration of the nondestructive testers' employment with Piedmont and did nothing to regain plaintiffs' seniority.

The plaintiffs contend that the union's hostility toward them underlies their seeming disparate treatment. For instance, the affidavit of Mr. Adkins attests:

> It has been my experience, since transferring to the airlines division from fixed base, that there is hostility among the IAM officials against former fixed based employees. It has been my observation that I was not wanted in the IAM Local because I was from fixed base, and that my opinions were not considered by my Union Local.

Plaintiffs' Brief in Opposition to Defendants' Motions For Summary Judgment, Exhibit C. Furthermore, plaintiffs allege that Tom Schick, then chief executive officer of Piedmont Airlines, asserted that the airline would not object to the former fixed based employees getting credit for their time served there but that the IAM would probably not agree. *Id.* Exhibit B. The apparent animosity stems from nearly a decade of litigation between some fixed based employees of Piedmont and IAM. Thus, from plaintiffs' perspective, IAM failed to seize a golden opportunity during the merger where management was receptive to their demands simply because of the bitterness that has developed.

If there is one area some agreement can be bridged between the parties, it is that the starting point for this dispute arises out of previous litigation involving IAM, fixed based employees, and the National Mediation Board. The plaintiffs argue that the union hostility arises from the prior efforts in court where they challenged union positions with respect to their status

under a collective bargaining agreement. In contrast, the defendants claim that this action is a contrived attempt by plaintiffs to revive expectations or results that were soundly rejected a decade ago when this court ruled in *Reynolds v. International Association of Machinists and Aerospace Workers,* No. C–179–WS–73, 87 L.R.R.M. (BNA) 2123 (M.D.N.C. Nov. 8, 1973), *aff'd per curiam, Reynolds v. IAM,* 498 F.2d 1397 (4th Cir.1974), and *Piedmont Aviation, Inc. v. National Mediation Board,* No. C–77–281–WS (M.D.N.C. June 18, 1981), *aff'd, Piedmont Aviation, Inc. v. National Mediation Board,* 685 F.2d 431 (4th Cir.1982). The question that much of this litigation addressed was whether the fixed based mechanics of General Aviation were covered by the Railway Labor Act, 45 U.S.C.A. § 151 *et seq.* (West 1986), which governs labor relations between airline employees and carriers. The precise issue the former litigation addressed was whether the fixed base employees, and mechanics in particular, were under the jurisdiction of the Railway Labor Act and, thereby, covered by the collective bargaining agreement which established benefits and seniority rights for those covered under it.

The IAM claims that it does not harbor any hostility from the past litigation and that its representation of the former fixed based employees of IAM during the merger negotiations was fair and equitable. Its position is that the plaintiffs received all the credit in terms of seniority that they were entitled because its post-merger seniority with USAIR was precisely the same as its premerger seniority with Piedmont Aviation. Pursuant to the collective bargaining agreement, each employee who transferred from General Aviation to Piedmont Airlines would lose his seniority and would begin anew with Piedmont Airlines for lay-off purposes. At merger, the seniority list of USAIR and Piedmont were merged on the basis of seniority. This process is called dove tailing. Therefore, the claims of the plaintiffs are without merit.

## Discussion

On January 26, 1989, the plaintiffs filed suit alleging a breach of the duty of fair representation by defendant IAM by beaching its obligations under the Allegheny/Mohawk Labor Protective Provisions (hereafter LPP). In relevant part, Section 3 of LPP provides the following: "Insofar as the merger affects the seniority rights of the carriers' employees, provisions shall be made for the integration of seniority lists in fair and equitable manner, including, where applicable, agreement through collective bargaining between the carriers and the representatives of the employees affected." The plaintiffs contend that the integrated seniority list developed by the IAM was unfair, discriminatory, and arbitrary and capricious with respect to the plaintiffs' standing in the list. Plaintiffs further alleged that Piedmont Aviation (USAIR's predecessor in interest) colluded and conspired with IAM regarding plaintiffs' arbitrary placement on the seniority list and its obligation under the LPP by not attempting to integrate seniority rights in the merged company in a fair and equitable manner.

The defendants moved for summary judgment on several grounds. The standard for deciding this motion is well settled under Rule 56(c) of the Federal Rules of Civil Procedure:

> "[T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, taken together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."

*Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## Statute of Limitations

■ The IAM joined by USAIR, Piedmont Aviation's successor in interest, first argue that plaintiffs' claims are barred by the applicable statue of limitations. The Supreme Court approved a statute of limi-

tations period of six months for a breach of the duty of fair representation. *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The Court of Appeals for the Fourth Circuit held that the limitation period announced in *DelCostello* applied with equal force to similar claims brought pursuant to the Railway Labor Act. *Triplett v. Brotherhood of Railway Airline and Steam Ship Clerks*, 801 F.2d 700, 701 (4th Cir.1986).

The IAM contends that plaintiffs' cause of action accrued at the time the union and Piedmont Aviation entered a collective bargaining agreement which limited the accrual of seniority to certain job classifications within the airline division. The collective bargaining agreement also expressly disallowed the transfer of seniority from one division of Piedmont Aviation to another. Thus, IAM argues plaintiffs' seniority claims accrued on January 1, 1974 for fixed based employees, and the statute of limitations ran on July 1, 1974. Regardless of what transpired during the two mergers, IAM contends that the 1974 date controls this action with regard to seniority claims based on the agreement even if the two mergers since the collective bargaining agreement was adopted have disadvantaged plaintiffs' seniority standing. In *Lorance v. AT & T Technologies, Inc.*, —— U.S. ——, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), the Supreme Court held essentially that the statute of limitations period is triggered when a seniority system is first adopted, not when the effects of the system are felt.

The plaintiffs argue that the defendants' reliance on *Lorance* and the 1974 collective bargaining agreement is misplaced. The plaintiffs argue that the collective bargaining agreement is not the issue. They concede that the fixed based employees' rights under the collective bargaining agreement have been previously adjudicated against their position. Plaintiffs allege that the injury stems from the disparate treatment between plaintiffs and others whom they claim were similarly situated. The plaintiffs argue that the union sought and secured seniority credit for nondestructive testers who were not covered under the collective bargaining agreement prior to the USAIR–Piedmont merger negotiations, yet received the full seniority credit for their time served at Piedmont Aviation. Thus, plaintiffs contend that union hostility, not the collective bargaining agreement, is at the heart of this dispute.

The plaintiffs correctly assert: "Federal courts generally apply the 'discovery rule' to construe statutes of limitations: the statute begins to run when the plaintiff discovers, or in the exercise of reasonable diligence should discover, the facts giving rise to a claim." *Hamilton v. 1st Source Bank*, 895 F.2d 159, 163 (4th Cir.1990). Therefore, plaintiffs contend that the applicable date for the running of the statute of limitations was the time the plaintiffs became aware of their position on the integrated seniority list in the fall 1988, since that was the occasion plaintiffs knew that a breach of the duty of fair representation during the Piedmont–USAIR merger occurred.

The defendants cite the 1986 merger between Empire Airlines and Piedmont as an alternative basis to bar plaintiffs' action, in that the former fixed based mechanics knew or should have known that their merger expectations would not have been fulfilled when IAM took no action on their behalf at that time. This court does not reach that question because the 1974 collective bargaining agreement provides a sufficient basis to run the six month statute of limitations. The 1989 suit by the former fixed based mechanics is time barred because the injury alleged occurred when the collective bargaining agreement was adopted. While it is true that concerns regarding job security are heightened at the prospect of merger between two large companies, the source of the plaintiffs' apprehension or injury is the collective bargaining agreement which denied them seniority credit for the years that they worked in another division of Piedmont

Aviation, making them more vulnerable than otherwise. Indeed, many fixed based mechanics, including some current plaintiffs, were aware of the potential consequences of the collective bargaining agreement and initiated proceedings that were designed to remedy the situation when it occurred.

*Lorance v. AT & T Technologies, Inc.,* —— U.S. ——, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), provides compelling support for the proposition that plaintiffs' injury upon the adoption of a seniority system pursuant to a collective bargaining agreement between IAM and Piedmont Airlines triggers the limitation period. The statute of limitations began to run from that moment the agreement became effective unless plaintiffs allege the seniority provisions of the contract were discriminatory as applied to them.

*Lorance* involved a claim of sex discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000 *et seq.* (West 1981), alleging disparate impact through the neutral application of a facially nondiscriminatory seniority system. The plaintiffs were demoted from their jobs in 1982 because they lacked classification seniority. The plaintiffs contended that a seniority system established through a collective bargaining agreement in 1979 had a disparate impact upon female employees and, therefore, violated Title VII laws against sex discrimination. The seniority system ended plant-wide seniority for employees who made recent transfers and only gave them credit for the length of service in a particular job classification. The *Lorance* plaintiffs claimed that the enforcement of the seniority provisions placed a disparate impact upon them due to the fact that they lost years of seniority credit when they transferred to a job classification within the company that was for-

merly male dominated. The issue before the Supreme Court was when the limitation period began to run in a Title VII case which questioned the validity of a seniority system that was facially nondiscriminatory.

*Lorance* is particularly persuasive in the instant case because the court relied on precedents involving unfair labor practices under the National Labor Relations Act,[1] 29 U.S.C.A. § 158 (West 1982), and the factual circumstances are fairly analogous. The cases the court discussed involved the timeliness of suits under various collective bargaining agreements and if a theory of continuing violations might extend the running of an action.

The Supreme Court relied in part on *Local Lodge No. 1424, International Assoc. of Machinists, AFL–CIO v. NLRB,* 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960), to defeat the petitioners' argument in *Lorance* that they were entitled to raise events that occurred outside the limitation period for an action involving the collective bargaining agreement based on a theory of continuing violation or continuous enforcement of an unlawful term. The Court stated that where a complaint is based upon a time-barred event, a party may not revive a legally defunct unfair labor practice by cloaking with illegality an otherwise lawful event. *See Lorance v. AT & T Technologies, Inc.,* —— U.S. ——, ——, 109 S.Ct. 2261, 2268, 104 L.Ed.2d 961 (1989); *Machinists v. NLRB,* 362 U.S. 411, 417, 80 S.Ct. 822, 827, 4 L.Ed.2d 832 (1960). Plaintiffs' current claim suffers from the same defect found in *Lorance* and *Machinists,* in that the breach of duty of fair representation suit attempts to rekindle stale grievances in the light of more recent events.

## Stare Decisis

■ Defendants also argue that the plaintiffs' action is barred by the doctrine

---

**1.** The Supreme Court noted in *Breininger v. Sheet Metal Workers International Association, Local Union No. 6,* —— U.S. ——, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989), that there was a significant overlap between claims under a breach of

the duty of fair representation and unfair labor practices under § 8(b) of the National Labor Relations Act, *as amended,* 29 U.S.C.A. § 158(b) (West 1982).

of stare decisis. One commentator has noted:

[T]he doctrine of stare decisis makes a decision on a point of law in one case a binding precedent in future cases in the same court, and such courts as owe obedience to the decision, until such time as the effect of the decision is nullified in some fashion: reversed, vacated, or disapproved by a superior court, overruled by the court that made it, or rendered irrelevant by changes in the positive law.

1B *Moore's Federal Practice* 0.402[2] at 25–27. The court discusses this question and the substantive issue in this suit to make clear the extent of its holding in prior cases as it applies to this suit to end what appears to be a twenty-year dispute between the union and some of it members. The defendants maintain that the prior actions are barred because the court has decided that the fixed based employees were not covered under the collective bargaining agreement and, thereby, not included in the seniority provisions of the collective bargaining agreement of Piedmont Airlines Division of Piedmont Aviation.

The plaintiffs actually do not dispute this court's earlier decisions that the fixed based employees of Piedmont Aviation were outside the craft or class of airline mechanics represented by the IAM Local, nor do they challenge the exclusion of fixed based employees from the 1974 collective bargaining agreement. Rather plaintiffs contend that never before have their rights been adjudicated with respect to defendants' duty to represent them fairly during merger negotiations under the LPP. If one would examine the prior rulings with respect to fixed based employees and their coverage under the collective bargaining agreement, it is clear that this action is unsustainable.

In 1971, mechanics of General Aviation (the fixed based division of Piedmont Aviation) brought the first action against IAM Local for violating the duty of fair representation owed to the plaintiffs. The plaintiffs argued that their exclusion from a collective bargaining agreement entered between the union and mechanics of the airline constituted an illegal, invidious and hostile act by the union against Piedmont Aviation workers. *Reynolds v. International Association of Machinists and Aerospace Workers*, No. C–179–WS–73, 87 L.R.R.M. (BNA) 2123 (M.D.N.C. Nov. 8, 1973). The court found that the primary issue presented by the litigation was whether the plaintiffs were members of the craft and class of "Airline Mechanics and Related Employees" of Piedmont Airlines, since that finding would determine whether the defendant owed a duty to the plaintiffs. *Id.* The court further found that the issue was primarily within the jurisdiction of the National Mediation Board and granted summary judgment on the defendants' behalf. The Court of Appeals for the Fourth Circuit affirmed the district court's decision in an unpublished opinion. *See Reynolds v. IAM,* 498 F.2d 1397 (4th Cir.1974).

After losing in court, Mr. Robert E. Reynolds petitioned the National Mediation Board (NMB) on behalf of himself and other General Aviation employees to determine whether they were in fact included in the same class and craft of airline mechanics and related employees of Piedmont Airlines which the board certified earlier. The National Mediation Board concluded in its Findings Upon Investigation, No. C–4299 (March 30, 1977), that the General Aviation employees who entered the classification before the election cut-off date were included in the December 3, 1970 certification which allowed IAM to collectively bargain on behalf of the airline mechanics.

Those findings were reviewed by this court in *Piedmont Aviation Inc. v. National Mediation Board,* No. C–77–281–WS (M.D.N.C. June 18, 1981). Piedmont Aviation brought this suit to invalidate the NMB findings, arguing that the Board acted beyond the scope of its statutory jurisdiction, that its decision was arbitrary and capricious, and that it was unsupported by substantial evidence. The IAM intervened as a party-plaintiff and also asked the court to declare the NMB ruling invalid and

asked additionally for a declaratory judgment. Then certain employees and former employees of Piedmont Aviation appeared as amicus curiae. These employees joined the NMB in seeking dismissal for lack of jurisdiction.

In a carefully drawn opinion, the Magistrate's Findings and Recommendations, the court recommended that the declaratory judgment be granted. Magistrate Russell Eliason opined:

> There can be little argument that neither General Aviation itself, nor even a group limited to all its mechanics, can be said to have sufficient involvement with Airlines so as to make either the division or the mechanics a part of the carrier's transportation activities.... Therefore, if for no other reason than the Board's certification sweeps too broadly, it may not stand with respect to the General Aviation mechanics who were certified, but not entitled to coverage under the [Railway Labor] Act.

*Piedmont Aviation, Inc. v. National Mediation Board*, No. C–77–281–WS at 36–37 (M.D.N.C. June 18, 1981). Judge Hiram H. Ward adopted the Magistrate's Findings and Recommendations and granted the defendant's motion for a declaratory judgment invalidating the NMB certificate issued on December 3, 1970 insofar as it included General Aviation mechanics, on the grounds that it exceeded the NMB's authority. The court also granted the motion to dismiss. However, the court declined to rule on whether some General Aviation mechanics could legitimately be part of the Airlines craft and class as that decision was committed to the Board's discretion. *See Switchmen's Union of North America v. National Mediation Board*, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943).

In September 1981, the National Mediation Board found that it did not have jurisdiction over the mechanics and other employees of the General Aviation Division of Piedmont Aviation. Two fixed based mechanics appealed the district court's decision, which was opposed by General Aviation Division of Piedmont Aviation, IAM, and impliedly the board. The Court of Appeals for the Fourth Circuit affirmed the district court's decision and declined to remand the case in light of the NMB's ruling. *See Piedmont Aviation, Inc. v. National Mediation Board*, 685 F.2d 431 (4th Cir. 1982).

Plaintiffs assert that the prior cases do not present a bar to this action. Regardless of whether the union had a duty to represent them in 1974 or 1981 as fixed based employees, they contend, the IAM has a duty to represent them as union members in 1988. "In examining the complaint, we are bound to look beyond the literal language used to ascertain the real cause of the complaint." *Jimenez–Nieves v. United States*, 682 F.2d 1, 6 (1st Cir. 1982); *See also Fitch v. United States*, 513 F.2d 1013, 1015 (6th Cir.), *cert. denied*, 423 U.S. 866, 96 S.Ct. 127, 46 L.Ed.2d 95 (1975). While the plaintiffs craft their cause of action in such a way as to avoid the seniority provisions of the collective bargaining agreement as a predicate for their action, the remedy they seek falls squarely upon restructuring the seniority list to give effect to their prior court challenges—the inclusion of the fixed based workers under the collective bargaining agreement. Insofar as plaintiffs seek credit for the years they worked in the fixed based division, the plaintiffs are really asking the court to find that their prior service in General Aviation was covered under the Railway Labor Act. This cause of action is clearly in the ambit of the prior decisions of this court. It was clear after this court entered its order, the Court of Appeals for the Fourth Circuit affirmed and the National Mediation Board ruled that the fixed based employees were not covered by the collective bargaining agreement, and thus their seniority did not accrue under it. The remedy plaintiffs request belie their claim.

### The Duty of Fair Representation

■ We now turn to the merits of plaintiffs' claim to provide an alternative basis for our holding today. Plaintiffs purport that their claim relies solely on the fair and

equitable clause of the LPP and exists independent of their rights under the collective bargaining agreement.

The Supreme Court noted in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 164 n. 14, 103 S.Ct. 2281, 2290 n. 14, 76 L.Ed.2d 476 (1983):

> The duty of fair representation exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representative. In such a system, if individual employees are not to be deprived of all effective means of protecting their own interest, it must be the duty of the representative organization "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."

(Citations omitted.) Plaintiffs contend that their placement on the seniority list is a breach of the union's duty of fair representation for several reasons. Under this theory, plaintiffs assert that the union's reliance on a strict seniority-based system was unfair. Plaintiffs contend that IAM Local acted in bad faith because it acknowledged the validity of plaintiffs' seniority grievance and did not act, even though management may have been receptive. Plaintiffs contend that IAM actively sought and secured full seniority for nondestructive testers who formerly were not covered under the collective bargaining agreement. Further, plaintiffs assert that the difference in treatment was a result of hostility from past litigation. The IAM strongly contests all those allegations.

Plaintiffs contend that there were a wide range of judicially approved options that IAM could have considered in the development of an integrated seniority lists for the merged companies. In *Airline Pilots Association, International v. Department of Transportation*, 880 F.2d 491, 495–96 (D.C. Cir.1989), the court stated that the "length of ... service, pre-merger job descriptions and expectations, and pre-merger compensation are but a few of the many legitimate factors that can be applied." Plaintiffs assert that IAM's failure to adequately take account of their merger expectations and rectify valid grievances when an opportunity was available constituted a breach of the IAM duty under the LPP to create an integrated seniority list in a fair and equitable manner.

At the hearing, the defendants rebutted plaintiffs' new contention with a simple motto: "Seniority prevails when all else fails." The defendants argue that they are not required to restructure the seniority lists of the merging companies to accommodate the expectations of a particular group of employees. The only slight variation in the strict seniority system involved twelve nondestructive testers who were part of the union on the USAIR side of the merger and not part of the collective bargaining agreement with Piedmont Airlines. In order to treat the Piedmont nondestructive testers in a manner similar to their USAIR counterparts, they were given credit for all their years under that classification. Every other employee was listed in chronological order from the date of entry into the Airline Division.

The Court of Appeals for the Second Circuit noted in *Haerum v. Air Line Pilots Association*, 892 F.2d 216, 221 (2nd Cir. 1989):

> The duty of fair representation does not require that a union achieve absolute equality among its members. Rather, because a union by necessity must differentiate among its members in a variety of contexts, a showing that union action has disadvantaged a group of members, without more does not establish a breach of the duty of fair representation. Thus, to prove a breach of the duty of fair representation, a union member must show that the union's conduct was arbitrary, discriminatory or in bad faith.

(Citations omitted). The plaintiffs cannot seriously be heard to complain that their

placement on the seniority list in chronological sequence with ninety-nine percent of the work force of the two airlines is a breach of the duty of fair representation. The union's treatment of plaintiffs was identical to nearly all the workers of Piedmont Aviation and USAIR. Plaintiffs' pre-merger seniority for lay-off purposes parallels exactly their post-merger status. As the *Haerum* court noted: "[T]he objective of the duty of fair representation is to provide substantive and procedural safeguards for minority members of the collective bargaining unit." *Id.* The IAM clearly met its duty to plaintiffs by securing them everything they were entitled to with respect to seniority. Since they .were not prejudiced by the post merger seniority list, there was no breach of. the duty of fair representation during the merger of USAIR and Piedmont with respect to compliance with Section 3 of the Allegheny/Mohawk Labor Protective Provisions.

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), the Supreme Court stated that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (Citations omitted.) We hold today that plaintiffs have failed to make a showing that there is a material issue in dispute. As we find no breach of the fair duty of representation by IAM during the merger, defendants USAIR and Piedmont Aviation cannot be liable for colluding and conspiring with IAM in that regard.

### Conclusion

For the reasons discussed above, the court grants defendants' motion for summary judgment. An appropriate Judgment will be entered in accordance with this Memorandum Opinion.