Gary F. **KELLER**, Homer C. Miller, Keith E. Sansom, and Curtis F. Woods, Plaintiffs,

v.

DISTRICT LODGE NO. 19, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, Defendant.

Civ. A. No. 3:94–0137.

United States District Court, S.D. West Virginia, Huntington Division.

April 18, 1995.

Robert V. Berthold, Jr., Charleston, WV, Robert L. Templeton, Ashland, KY, for plaintiffs.

Robin Jean Davis, Segal & Davis, Charleston, WV, Michael S. Wolly, Zwerdling, Paul, Leibig, Kahn, Thompson & Driesen, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are the Defendant's motions for partial summary judgment based on the statute of limitations and for summary judgment on the merits based on the duty of fair representation. For reasons set forth below, Defendant's motion for summary judgment on claims barred by the statute of limitations is **GRANTED** in part and **DENIED** in part.

Further, Defendant's motion for summary judgment on the merits is **GRANTED**.

### I

A principal purpose of summary judgment is to isolate and dispose of meritless litigation. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The standard used to determine whether a motion for summary judgment should be granted or denied was stated recently by our Court of Appeals:

A moving party is entitled to summary judgment "if the pleading[s], depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(c). *See Charbonnages de France v. Smith*, 597 F.2d 406 (4th Cir.1979).

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2514. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A mere scintilla of evidence supporting the case is insufficient. *Id.*

*Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994), *cert. denied*, — U.S. —, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994). *Accord Riffe v.*

*Magushi*, 859 F.Supp. 220, 222, n. 1 (S.D.W.Va.1994); *Cornell v. General Electric Plastics*, 853 F.Supp. 221, 225–26 (S.D.W.Va. 1994); *Thomas v. Shoney's, Inc.*, 845 F.Supp. 388, 389–90 (S.D.W.Va.1994) (Haden, C.J.).

## II

The material facts are undisputed. The Plaintiffs, Gary F. Keller, Homer C. Miller, Keith E. Sansom, and Curtis F. Woods, are CSX Transportation (CSXT) machinists based in Huntington, West Virginia, who were furloughed November 9, 1988 as part of a systemwide furlough of over 600 employees. Over one hundred machinists were furloughed from the Huntington shops.[1] The International Association of Machinists and Aerospace Workers (IAM) and the Defendant, its District Lodge No. 19, are the exclusive collective bargaining representatives for the CSXT machinists under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151–188 (1982).

Initially, CSXT offered a buy-out to the furloughed machinists, but that proposal was not acceptable to the union. Instead, the IAM filed claims for protective benefits on behalf of all machinists furloughed. The union asserted all the furloughs stemmed from mergers and consolidations of facilities that CSXT accomplished under authority granted by the Interstate Commerce Commission in 1980 and 1982.[2] On August 11, 1989 all the claims filed were denied by CSXT, which maintained the furloughs were based on purely economic considerations unrelated to the earlier transaction triggering eligibility for the protective benefits.

While the claims filed by the union for the Plaintiffs and other machinists were pending, the sheet metal workers union arbitrated two sets of claims filed on behalf of its members furloughed by CSXT on October 12, 1988 from Corbin, Kentucky and Waycross, Georgia. The sheet metal workers lost both sets

of claims for protective benefits in arbitration.

After the IAM learned of the poor results of the sheet metal workers' arbitration, the union decided to choose one of the machinists' furlough locations for arbitration as a test case. The union chose to arbitrate the claims of thirteen machinists furloughed at Waycross, Georgia. The claims of other machinists were held in abeyance pending the outcome of the Waycross claims. Plaintiffs Keller and Miller were informed in August 1992 their case were being held while the sheet metal workers attempted to arbitrate their similar dispute with CSXT.

On March 4 and April 5, 1993 Plaintiffs, through counsel, inquired about the status of their claims and of the union's rejection of a CSXT offer to buy-out jobs in 1988. The union responded April 12, 1993 that the claims of the Waycross machinists would be arbitrated first and explained its position on why the earlier buy-out offer was not acceptable to the union. On August 3, 1993, the arbitrator denied the Waycross machinists claims for protective benefits.

On August 20, 1993 the union sent a copy of the Waycross arbitration award to Plaintiffs Keller and Miller. The union explained that given the losses in the sheet metal arbitration and the loss on the Waycross claims, it would not attempt to arbitrate the Huntington machinists' claims and their files would be closed.

On February 18, 1994, the Plaintiffs filed this action against District Lodge No. 19 and IAM. The Complaint alleged the Defendants breached their duties of fair representation through:

> the decision, made formally and communicated to the Plaintiffs on or about August 20, 1993, to refuse to proceed with arbitration or otherwise pursue claims previously made for protective benefits from CSXT;

---

1. A total of 147 machinists were furloughed throughout CSXT's system. Other than the Huntington shops, machinists were furloughed in Waycross, Georgia; Corbin, Kentucky; Grand Rapids, Michigan; Nashville, Tennessee; Hamlet, North Carolina; Tampa, Florida; and Clifton Forge, West Virginia.

2. The Interstate Commerce Commission granted several rail carriers the authority to merge and form CSXT in 1980 and 1982. CSXT was formed from the Chesapeake & Ohio Railway Company, the Baltimore & Ohio Railroad Company, the Louisville & Nashville Railroad, and the Seaboard Coast Line Railroad.

depriving the Plaintiffs of the benefits offered to them by CSXT in the form of voluntary separation benefits; electing an ineffectual remedy with little likelihood of success; subordinating claims of the Plaintiffs to less meritorious claims of other constituents; failing to vigorously, competently, and effectively present cases in arbitration upon which the claims of the Plaintiffs were made dependent; and otherwise unreasonably and arbitrarily discriminating against these Plaintiffs.

Complaint, p. 3.

Defendant IAM was dismissed from the suit pursuant to Rule 4(m), Federal Rules of Civil Procedure, for the Plaintiffs' failure to effectuate service within 120 days. Plaintiffs did not respond to IAM's motion and could not show good cause for their late service of IAM on their following motion for reconsideration.

Subsequently, Defendant District Lodge No. 19 filed the pending motions for summary judgment. The motion for partial summary judgment on the statute of limitations issue was filed January 13, 1995. The Defendant's second motion for summary judgment on the merits was filed January 23, 1995.

The Plaintiffs twice sought extensions of time in which to file their response to the first motion. The Court granted both motions and the Plaintiffs' opposition memorandum was filed February 1, 1994. Although the Defendants moved for partial summary judgment with attached depositions, Plaintiffs' response denying Defendant's allegations did not provide any supporting depositions or affidavits in opposition. Instead, Plaintiffs referred to a response they intended to file to the other motion for summary judgment on the merits filed by District Lodge No. 19. Plaintiffs stated:

> [They] expect to more fully articulate the details of their theory of the case, supported by ample references to the evidence thus far, in their anticipated Response to the separate "Motion for Summary Judgment on the Merits" which has apparently been filed by the Defendant.

Plaintiffs' Memorandum in Opposition to Motion for Partial Summary Judgment, 4–5 (footnote omitted).

Prior to filing its responsive memorandum to the Defendant's second motion for summary judgment on the merits, the Plaintiffs three times moved for extensions to respond. Attached to their third motion was the Plaintiffs' proposed responsive memorandum and a motion to file a memorandum in excess of twenty pages. Plaintiffs sought to exceed the twenty-page limit established by the Local Rules of Civil Procedure, because they had

> filed a relatively short Memorandum in response to this earlier Motion for Partial Summary Judgment, and indicated that a more complete explanation of the merits of the claims by the Plaintiffs, with references to the deposition testimony and documentary evidence of record, would be set forth in their response to the second dispositive Motion which the Plaintiffs expected to receive from the Defendant.

Plaintiffs' Motion for Leave to File Memorandum in Excess of Twenty Pages, 1–2.

On March 2, 1995, the Court granted the third motion to extend time but denied the motion to file a memorandum in excess of twenty pages because the Plaintiffs had not shown good cause to file a brief in excess of the page limit. Plaintiffs were allowed to file a memorandum in accordance with the Local Rules by March 8, 1995. Attached to the filed memorandum was Plaintiffs' counterstatement and supplementation of material facts as to which there is no dispute. In the counterstatement, Plaintiffs "accept[ed] as generally accurate the itemized recitation by the Defendant of forty-two 'Material Facts as to Which There is No Material Issue'." Plaintiffs' Counter–Statement and Supplement of Material Facts as to Which There is No Dispute 1.

## III

### Statute of Limitations

As noted above, Rule 56, Federal Rules of Civil Procedure, provides the framework for summary judgment. Rule 56(b) allows a defendant to move for summary judgment "with or without supporting affidavits." However, Rule 56(e) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Rule 56(e) allows a court to permit "affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits." *See* L.R.Civ.P. 4.01(a).

Here, the Plaintiffs have not responded with affidavits, depositions, or answers to interrogatories setting forth any genuine issue for trial with respect to the motion for partial summary judgment on the statute of limitations issue. Instead, all that was provided were naked allegations that genuine issues do exist and that factual support would be supplied later with the response to the second motion for summary judgment on the merits filed by the Defendant.[3]

For this analysis, the Court considered the memorandum submitted by the Plaintiffs in opposition to the motion for summary judgment on the merits as it relates to the current question. No genuine issue of material fact on the application of the statute of limitations to Plaintiffs' claims was raised in the Plaintiffs' memorandum. In fact, Plaintiffs agreed with many of the Defendant's factual assertions and supplemented such assertions with Plaintiffs' own statement of material facts as to which there is no dispute.

Although Plaintiffs have left the facts as alleged by the Defendant uncontroverted, the Court yet must determine whether Defendants are entitled to summary judgment as a matter of law. *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir.1993) ("Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to a 'judgment as a matter of law.'"). *See also Thomas v. Shoney's, Inc.*, 845 F.Supp. 388, 389 n. 3 (S.D.W.Va.1994) (Haden, C.J.); *Lovejoy v. Saldanha*, 838 F.Supp. 1120, 1121 n. 1 (S.D.W.Va.1993) (Haden, C.J.).

■ A six-month statute of limitations governs actions under the Railway Labor Act for breach of the union's duty of fair representation. *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir.1991); *Dement v. Richmond, Fredericksburg & Potomac R. Co.*, 845 F.2d 451, 460 (4th Cir.1988); *Triplett v. B.R.A.C.*, 801 F.2d 700, 702 (4th Cir.1986).[4] "A claim for such a breach accrues when the plaintiff knows, or should have known, that the grievance procedure has been exhausted or otherwise broken down." *Meekins*, 946 F.2d at 1057.

> Generally speaking, 'a cause of action for breach of the duty of fair representation accrues at the point where the grievance procedure has been exhausted or otherwise breaks down to the employee's disadvantage. It is only as this point that the employee is cognizant of any alleged breach of the duty owed him by the union.' *Hayes v. Reynolds Metals Co.*, 769 F.2d 1520, 1522 (11th Cir.1985) (per curiam). The standard is an objective one; namely, when the plaintiff knew, or should have known through the exercise of due diligence that his claim had accrued.

**3.** Such creative but delaying-type pleadings cannot be countenanced. Permitting such a delaying strategy would abrogate the requirement that responsive motions be filed within fourteen days from the date of service of the motion. L.R.Civ.P. 4.01(c). Counsel may not extend unilaterally the period to respond to a motion. Only the Court may grant an extension of time to file a response. F.R.Civ.P. 6(b).

**4.** Following our Court of Appeals, "[f]or all purposes relevant to this [decision], the legal principles governing the scope and nature of the of the statutory duty of fair representation are identical with respect to hybrid suits brought under the [Railway Labor Act and the Labor Management Relations Act ("LMRA")].... Accordingly, except as otherwise required, in this [decision] we will apply cases decided under the LMRA and the RLA without distinguishing between the same." *Dement v. Richmond, Fredericksburg & Potomac R. Co.*, 845 F.2d 451, 457 n. 12 (4th Cir.1988).

*Dement,* 845 F.2d at 460. "Upon equitable principles, however, the running of the limitations period may be tolled or the union defendant estopped from asserting it." *Smith v. Local 7898, United Steelworkers of Amer.,* 834 F.2d 93, 95 (4th Cir.1987).

Plaintiffs' claim centers on two discrete transactions: the union's decision not to pursue the buy-out, or voluntary separation agreement, offered by CSXT in 1988 and the arbitration strategy the union instead chose to pursue. The six-month statute of limitations is applicable to each transaction individually.

▪ Plaintiffs' claim for breach of the duty of fair representation based on the union's refusal to pursue a buy-out from CSXT is barred by the statute of limitations. The union's decision not to pursue a buy-out and to pursue arbitration for protective benefits was made in 1988. Plaintiffs reasonably should have known a buy-out was not being negotiated when their claims were prepared for arbitration. At the very latest, Plaintiffs knew of the union's decision against buy-outs in April 1993 when the union responded to Plaintiffs' inquiry on the buy-out. As such, Plaintiffs were aware of the union's decision not to pursue a buy-out at least nine months before filing suit. Accordingly, Plaintiffs' claim based on the potential buy-out is time-barred.[5]

▪ On the other hand, Plaintiffs' claim based on the arbitration procedure to which the union submitted their claims is not barred by the six-month statute of limitations. Plaintiffs were informed August 20, 1993 the union would not pursue further arbitration on their claims. It was at this point the Plaintiffs could discern that the grievance procedure adopted to resolve their claims had broken down. Their suit was filed February 18, 1994, two days before the running of the statute.

Defendant's contention that parts of Plaintiffs' claims on the arbitration are separately barred by the statute of limitations is incorrect. Plaintiffs' claim did not separately accrue at each strategic decision made by the union. Instead, they accrued when the union decided not to pursue arbitration after the loss in the Waycross arbitration. Only then was the arbitration process exhausted. As recently stated by the United States Court of Appeals for the Sixth Circuit:

> Simply stated, requiring exhaustion of the grievance process is appropriate because the arbitration award may make the employee whole, in spite of even the most egregious union failures. *See Lucas v. Mountain States Tel. & Tel.,* 909 F.2d 419, 421 (10th Cir.1990). To require otherwise would undermine the strong national policy favoring nonjudicial resolution of labor disputes by penalizing those who try to resolve their disputes through the grievance process before filing suit in federal court. *Id.* at 422.

*Schoonover v. Consolidated Freightways Corp.,* 49 F.3d 219, 220–21 (6th Cir.1995). *See, e.g., Edwards v. International Union, UPGWA,* 46 F.3d 1047 (10th Cir.1995); *Vadino v. A. Valey Engineers,* 903 F.2d 253 (3rd Cir.1990); *Galindo v. Stoody Co.,* 793 F.2d 1502 (9th Cir.1986); *Samples v. Ryder Truck Lines, Inc.,* 755 F.2d 881 (11th Cir. 1985).

## IV

### Duty of Fair Representation

▪ As the Plaintiffs' exclusive collective bargaining representative, the Defendant has a statutorily implied duty of fair representa-

---

5. This situation is similar to *Addison v. Piedmont Aviation, Inc.,* 745 F.Supp. 343 (M.D.N.C.1990), in which Chief Judge Richard Erwin held the plaintiffs' 1989 claim for breach of the duty of fair representation based on the application of a seniority system adopted in 1974 was barred by the six-month statute of limitations. Judge Erwin held the 1974 collective bargaining agreement adopting the seniority system was the source of the plaintiffs' injury. *Id.* at 347. The merger of Piedmont and USAIR merely heightened the awareness of the agreement denying the plaintiffs seniority *Id.*

Here, the union's failure to pursue further arbitration merely heightened the awareness of the decision made in 1988 not to pursue buy-outs. The failure in arbitration re-emphasized the potential for loss that inherently existed in the decision not to pursue the buy-out from CSXT. Plaintiffs were aware of what was lost in the initial decision, the arbitration disappointment did not reopen that loss.

tion under the Railway Labor Act. *Dement,* 845 F.2d at 453.

> The duty of fair representation exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representative. In such a system, if individual employees are not to be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.

*DelCostello v. International Broth. of Teamsters,* 462 U.S. 151, 164 n. 14, 103 S.Ct. 2281, 2290 n. 14, 76 L.Ed.2d 476 (1983) (quotation omitted). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967).

Because conduct that is arbitrary, discriminatory, or made in bad faith is required to breach the duty, "[s]imple negligence, ineffectiveness, or poor judgment is insufficient to establish a breach of the union's duty.... Rather, the union's conduct must be grossly deficient or in reckless disregard of the member's rights." *Ash v. United Parcel Service, Inc.,* 800 F.2d 409, 411 (4th Cir.1986) (per curiam) (quotations omitted). *See also Causey v. Local 1323, UAW,* 734 F.Supp. 1201, 1204 (D.S.C.1989); *Steed v. United Parcel Service, Inc.,* 512 F.Supp. 1088, 1092 (S.D.W.Va.1981).

> These principles lead inevitably to the conclusion that honest, mistaken conduct does not violate the union's duty of fair representation.... A union's exercise of its judgment need not appear as wise in the glaring light of hindsight, and a violation of the duty of fair representation is not made out by proof the union made a mistake in judgment.

*Smith v. Local 7898, United Steelworkers of Amer.,* 834 F.2d 93, 96 (4th Cir.1987) (quotation omitted). "Honesty and good faith are demanded of [the union], but as long as there are those ingredients in its conduct, a union has broad discretion in treating competing interests of members of the bargaining unit." *Id. See Steed,* 512 F.Supp. at 1092. "Where the evidence does not tend to establish the severely deficient union conduct required for breach of the duty of fair representation, summary judgment is appropriate." *Ash,* 800 F.2d at 412.

Plaintiffs' claim against the union for mishandling their arbitration rests firmly on the opinion of W.D. Snell, the retired General Chairman of the union who had initially handled the Plaintiffs' grievance. Mr. Snell disagrees completely with the strategy the union pursued for the grievance after his retirement. However, such second-guessing of the Defendant's strategy does not establish proof that the union acted arbitrarily, discriminatorily, or in bad faith in pursuing that strategy. Even though the strategy chosen by the Defendant may leave something to be desired, the Court cannot infer from such choice an unfair effort on the Defendant's part. *Steed,* 512 F.Supp. at 1092. A mere disagreement in retrospect whether the Defendant's strategy was correct, does not raise an inference that the Defendant acted arbitrarily, discriminatorily, or in bad faith.

Here, the Defendant made a reasonable decision based on the negative outcome of the sheet metal workers' arbitration and the Waycross arbitration not to further pursue the Plaintiffs' claims. Although in hindsight, the strategy leading up to such decision may appear to be bad judgment, such mistake does not rise to the level of conduct required for a breach of the duty. As this Court previously stated:

> With regard to the instant litigation, the law is clear that unless a union's decision is arbitrary, discriminatory, or made in bad faith, its judgment not to take a complaint to arbitration should not be second guessed. *Ash v. United Parcel Service,* 800 F.2d 409 (4th Cir.1986). The union naturally has limited resources. It must give priority to those claims it believes

meritorious. It must balance the interest of the membership as a whole with those of the individual member. A union which would take every grievance to arbitration regardless of the merit does harm to its own integrity and that of the system. Undue interference with the union's judgment would create an atmosphere where procedural effort was favored over substantive merit. Everyone would lose.

*Cunningham v. Owens–Illinois, Inc.,* 669 F.Supp. 757, 761 (S.D.W.Va.1987) (Haden, C.J.). Since the uncontroverted evidence, viewed most favorably to the Plaintiffs, does not establish the severely deficient union conduct required for a breach of the duty of fair representation, summary judgment is appropriate. *Ash,* 800 F.2d at 412. Accordingly, the Defendant's motion for summary judgment on the merits is granted.

V

In summary, the Plaintiffs' claim based on the Defendant's decision not to pursue a buy-out from CSXT is barred by the six-month statute of limitations. Accordingly, the Defendant's motion for partial summary judgment on claims barred by the statute of limitation is **GRANTED** with respect to the buy-out decision, and **DENIED** with regard to the remainder of the Plaintiffs' claim based on the arbitration of their grievance. Further, because the Defendant's arbitration strategy and decision not to pursue arbitration do not breach the duty of fair representation, the Defendant's motion for summary judgment on the merits is **GRANTED**.