Richard SMITH, Plaintiff–Appellee,

v.

LOCAL 7898, UNITED STEELWORKERS OF AMERICA, an unincorporated association, Defendant–Appellant,

and

Georgetown Steel Corporation, Defendant.

No. 86–2600.

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1987.

Decided Nov. 30, 1987.

George Herbert Cohen (L. Hope O'Keefe, Bredhoff & Kaiser, Franklin G. Shuler, Cooper, Mitch & Crawford, Thomas J. Rubillo, Rubillo & Feck on brief), for defendant-appellant.

Ray P. McClain (Harriet McB. Johnson, McClain & Derfner on brief), for plaintiff-appellee.

Before SPROUSE and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

This is one of those hybrid actions in which a union member sues his union for alleged breach of its duty of fair representation and his employer for alleged violation of the collective bargaining agreement. A jury awarded the plaintiff damages against both defendants, and awarded him his attorney's fees against the union.

Upon the union's appeal, we reverse the judgment of the district court against the union, and remand for a new trial.

## I.

Georgetown Steel Corporation operates a steel manufacturing plant in Georgetown, South Carolina. Under a collective bargaining agreement, Local 7898, United Steelworkers of America, is and has been the exclusive bargaining representative of the production and maintenance employees of Georgetown Steel.

The plaintiff, Richard Smith, was employed as a mechanic at Georgetown Steel in February 1974. Earlier, in July 1973, Calvin Richardson was employed as a mechanic in the plant.

In May 1980, Richardson was promoted to a "ten percent foreman." That is a temporary, testing position. An occupant of that position is paid the regular hourly wage of his old position plus ten percent, and is temporarily given an opportunity to perform many of the responsibilities of a foreman. As of August 1, 1980, Richardson was promoted to foreman. In that position, he was given all the supervisory responsibilities of a foreman and received a foreman's salary. Five months later, at Richardson's request, Georgetown Steel demoted him and reassigned him to his former hourly wage position as a mechanic.

The collective bargaining agreement provided that an employee, promoted to foreman, could be returned to his old hourly wage job without loss of seniority, if he had spent less than six months in the position of foreman. If Richardson's time as a "ten percenter" is added to the five months during which he served as foreman and treated as a time of foreman's service, Richardson would have had no unqualified right to return to the bargaining unit without loss of seniority. If the time of service as a ten percenter is not to be counted in computing the six months' limitation period, Richardson would have had the unqualified right to the reinstatement he was granted.

After Richardson's reassignment, Casselman, the union shop steward, filed a grievance on behalf of several mechanics. He contended that Richardson's time spent as a ten percenter should be counted in computing the six months' limitation, and that Richardson had lost his accumulated seniority as a mechanic. In response, Georgetown Steel expressed its agreement with Casselman's contention and discharged Richardson.

Richardson protested his discharge and filed an unfair labor practice charge with the Regional Director of the National Labor Relations Board. Thereupon, a union representative and a company official telephoned the office of the Regional Director of the NLRB and spoke to an unidentified representative of the Board there. The Board agent informed them that, in his opinion, Richardson's time spent as a ten percenter should not have been counted as time in foreman service and that, since he had been paying union dues during that period, he should be treated as a continuing member of the bargaining unit until his August promotion to regular foreman. There followed a joint meeting of representatives of the union and of management with Richardson. It was there agreed that Richardson should be reinstated to his bargaining unit position without loss of seniority.

In August 1981 Smith was laid off for six months. Because of his greater seniority, Richardson was not, and Smith would not have been laid off if he had been at the next higher place on the seniority list.

On August 25, 1983, two years after the August 1981 layoff and two and one-half years after Richardson had been reinstated, Smith filed a grievance protesting Richardson's reinstatement without loss of his seniority. The union refused to process the grievance upon the grounds that it was untimely and sought to resurrect a dispute that had long since been settled. Smith then filed this action against the union and his employer.

## II.

We first must deal with the problem of time limitations.

Under *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), Smith's action against the union was time barred unless filed within six months from the time when he discovered his injury or should have discovered it through the exercise of reasonable diligence. Upon equitable principles, however, the running of the limitations period may be tolled or the union defendant estopped from asserting it. *Cf. Felty v. Graves–Humphreys Co.*, 785 F.2d 516, 519 (4th Cir.1986) (discussing limitations period under the Age Discrimination in Employment Act). Smith contended that his action was timely in light of those principles, and he prevailed in the district court on that point.

In 1981 Smith knew that Richardson had served as a foreman and then had been reinstated to his former position as mechanic without loss of seniority. Smith knew that Richardson was retained when Smith was laid off in August 1981 because of his lesser seniority. The employees had been told by representatives of both the union and management, however, that the National Labor Relations Board had ordered Richardson to be reinstated. Smith got that information indirectly from union sources, and reasonably believed that an order of the National Labor Relations Board gave the union no discretion to contest Richardson's reinstatement. He had no reason to suspect that the union had supported Richardson's grievance or played a role in his reinstatement.

The union may have acted reasonably in accepting the informal advice of the unidentified agent of the National Labor Relations Board, but the union's action in support of Richardson's grievance, although influenced by the informal advice it had received from the Board agent, is quite different from union acquiescence in a formal Board order. Until the facts became known to Smith, he had no reason to complain of the union's conduct.

█ Invocation of equitable principles may be unavailable to one who fails to act

diligently. *See Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984) (per curiam). At the time of Richardson's reinstatement, however, the union and the employer had a consistent, complete explanation for it. Smith had no reason to demand to see a copy of the Board's order or to make separate inquiry of the Board. He had every reason to accept as true what he had been told by his union and his employer; he need not have questioned the very existence of the order of the Board that he had been told had procured Richardson's reinstatement.

Once the facts became known to Smith, he acted promptly.

### III.

As exclusive bargaining representative for all employees in the bargaining unit, a union has the duty to treat every member of the union fairly, both in the process of collective bargaining and in the administration and enforcement of the collective bargaining agreement. *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). It may not discriminate against any member of the union or treat some members with hostility while favoring others. Honesty and good faith are demanded of it, but as long as there are those ingredients in its conduct, a union has broad discretion in treating competing interests of members of the bargaining unit. When the interests of members of the bargaining unit are not identical, a union may be unable to achieve complete satisfaction of everyone. It is granted a "wide range of reasonableness" so long as it acts with "complete good faith and honesty of purpose." *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953). *See also Humphrey v. Moore*, 375 U.S. 335, 349–50, 84 S.Ct. 363, 371–72, 11 L.Ed.2d 370 (1964). Disputes over seniority invariably mean that, in the end, one's gain is another's loss. Subject to the limitations of honesty and good faith, a union must have broad discretion in dealing with such situations. *Id.,*

see also, *Clayton v. Republic Airlines, Inc.*, 716 F.2d 729, 732 (9th Cir.1983).

These principles lead inevitably to the conclusion that "honest, mistaken conduct" does not violate the union's duty of fair representation. *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 301, 91 S.Ct. 1909, 1925, 29 L.Ed.2d 473 (1971). A union's exercise of its judgment need not appear as wise in the glaring light of hindsight, and a violation of the duty of fair representation is not made out by proof that the union made a mistake in judgment. *Vaca v. Sipes*, 386 U.S. at 192–93, 87 S.Ct. at 917–18; *Buchanan v. NLRB*, 597 F.2d 388, 394 (4th Cir.1979). As this court recently observed in *Ash v. United Parcel Service, Inc.*, 800 F.2d 409, 411 (4th Cir. 1986) (per curiam):

> Simple negligence, ineffectiveness, or poor judgment is insufficient to establish a breach of the union's duty. Rather, the union's conduct must be "grossly deficient" or in reckless disregard of the member's rights.... [A] flawless performance is not required to fulfill the union's duty. (Citations omitted).

The district court first instructed the jury on the general principles. It correctly charged the jury that a violation of the duty of fair representation could be made out only if the union acted "arbitrarily, discriminatorily or in bad faith." Proof of negligence or the exercise of poor judgment would not be enough. After statement of the broad general principles, however, the district court became more specific. The jury was told:

> If you care to, if you care to, you may find that preferential treatment to another employee in violation of the provision of the collective bargaining agreement, failure to request appropriate documentation to apprise itself of relevant provisions of the bargaining agreement, misrepresentation of the facts about or failure to properly explain treatment of a co-employee, refusal to process or investigate grievances, and acquiescence in or approval of erroneous decisions by management or other agencies consti-

tutes the type of conduct, these different things that I recite, you may determine, if you care to do so, that these things constitute a type of conduct which indicates a failure to properly represent an employee on the part of the union.

█ This instruction impermissibly authorized the jury to find that the union violated its duty of fair representation based upon specific conduct despite the fact that the union may have acted with complete honesty and good faith.

Resolution of the question regarding the employee's right to retain accumulated seniority inevitably results in the preference of one employee, or group of employees, over another employee, or group of employees. Reinstatement of Richardson with his accumulated seniority granted him a preference over Smith and the other mechanics initially employed after Richardson. The jury was told that it might bring in a verdict in favor of Smith on that account if it concluded that the resolution of the Richardson complaint was inconsistent with the collective bargaining agreement. The jury, however, is not free to second guess the union. It can find a violation of the union's duty of fair representation only if it finds that the union acted without the requisite honesty and good faith.

The jury was told that it might bring in a verdict for Smith if it found that the union had refused to process his grievance. It was undisputed that the union had refused to process Smith's grievance based upon the grounds that the grievance was untimely and sought to reopen a previously settled dispute. The union, however, is entitled to refuse to process a grievance under such circumstances, so long as the union's conduct is not deficient under the general standard, and without a reckless disregard of the rights of its members. *Wyatt v. Interstate & Ocean Transp. Co.*, 623 F.2d 888, 890–91 (4th Cir.1980). The jury was told that it might find that the union violated its duty of fair representation if the union acquiesced in or approved an erroneous decision by management or another agency. It was undisputed that the union had acquiesced in the informal advice of

the agent of the NLRB, but the jury's conclusion that the advice was mistaken is not enough to support a finding that the union violated its duty of fair representation. Honest conduct, though mistaken, cannot support a jury finding for Smith. *Lockridge*, 403 U.S. at 301, 91 S.Ct. at 1925.

For those several reasons, therefore, the instruction impermissibly permitted the jury to find that the union had violated its duty of fair representation despite the fact that it may have acted in full compliance with the equitable good faith standard.

This erroneous authorization of the jury to roam at large and to find a violation of the union's duty of fair representation without regard to those standards and criteria which should govern and control a review of the union's conduct requires that the judgment be vacated and a new trial awarded.

### IV.

We do not consider the jury's award of Smith's attorney's fees. The question of Smith's entitlement to attorney's fees should await resolution of Smith's substantive claim.

**REVERSED AND REMANDED.**