**Daniel L. THOMSON, Plaintiff**

v.

**VERIZON MARYLAND, INC., Defendant**

**No. Civ. AMD 00–3109.**

United States District Court, D. Maryland.

May 3, 2001.

---

Robin R. Cockey, Cickey, Brennan & Maloney, PC, Salisbury, MD, for Plaintiff.

R. Michael Smith, Dechert, Price & Rhoads, Washington, DC, for Defendant.

## MEMORANDUM

DAVIS, District Judge.

Plaintiff, Daniel L. Thomson ("Thomson"), was fired from his job with defendant Verizon Maryland, Inc. ("Verizon"), for misconduct. His union local attempted to save his job by prosecuting a grievance pursuant to the relevant collective bargaining agreement. When the grievance was unsuccessful, the union local declined to invoke binding arbitration, as is permitted by the collective bargaining agreement. Thomson appealed the union local's decision not to seek binding arbitration to the international union, which sustained the local's decision not to seek arbitration. Accordingly, Thomson has brought this suit.

Interestingly, Thomson has not sued the union local or the international union. Rather, he sued only Verizon, his former employer. In his amended complaint, he alleges the following claims in four numbered counts: (1) a "petition to compel arbitration on the basis of contractual authorization;" (2) a "petition to compel arbitration on the basis of the union's failure to provide fair representation;" (3) wrongful discharge under Maryland law; and (4) "invasion of privacy/false light defamation" under Maryland law. Pending before the court is Verizon's motion for summary judgment. I have thoroughly reviewed the parties' submissions and no hearing is necessary. *See* Local Rule 105.6. For the reasons discussed below, I shall grant the motion for summary judgment as to counts I, II and III, and I shall dismiss the "invasion of privacy/false light defamation" claim without prejudice for lack of jurisdiction.

## I. FACTS

The cardinal facts are not disputed. Thomson was employed as a technician/installer for Verizon. Accompanied by a Verizon trainee, Rick Smith, Thomson visited a work site in Salisbury, Maryland, where there was under construction a new facility for the use of the United States

Postal Service. Thomson and Smith expected to install telephone service at the site, but they found that they could not do so because of obstructions that had been put in place by the contractor building the facility.

The dispute which led to the termination of Thomson's employment surrounds Thomson's behavior and statements during and immediately after the visit to the Postal Service construction site. Not long after Thomson and Smith had visited the postal facility construction site, it was reported to Verizon by one of the contractors present during their visit that Thomson had behaved in an unprofessional manner. Specifically, the contractor reported that Thomson had repeatedly used profanity during his inspection of the work site, including the word "fuck." Furthermore, the same contractor reported that Thomson had used a racial slur ("sand nigger") to refer to a representative of the United States Postal Service who was present at the work site and whose personal appearance might reasonably cause an observer to believe he was a person of Arab ancestry. A second contractor confirmed Thomson's use of profanity but asserted that he did not hear Thomson use a racial slur. When Thomson's co-worker, Smith, was questioned about the incident, he confirmed Thomson's use of profanity at the work site and he reported that, as he and Thompson were driving away from the location, Thomson referred to the Postal Service representative as "a rug head" or "a towel head."

Under the direction of responsible officials of the Verizon human resources office, Verizon interviewed Thomson, who denied the allegations. Verizon then reinterviewed the contractors. Verizon determined that the allegations were true and therefore terminated Thomson's employment on the grounds of misconduct.

As mentioned above, the union local grieved Thomson's discharge, to no avail. Thereafter, the union local declined to demand binding arbitration as Thomson (and his attorney) insisted. Thomson appealed the union local's refusal to seek binding arbitration through union channels, but the international union sustained the local's decision not to seek binding arbitration.

The gravamen of Thomson's complaint here is that the union conducted a poor investigation of the allegations and/or failed to utilize "exculpatory" evidence provided by Thomson and his attorney, e.g., it failed to interview the contractors or the Postal Service representatives who were present during the disputed visit, and it failed to make use of Thomson's favorable polygraph results. In sum, according to Thomson, the union local handled the grievance in a "perfunctory" fashion, and thereby breached its duty of fair representation.[1]

## II. SUMMARY JUDGMENT STANDARDS

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the facts, as well as the inferences to be drawn therefrom, must be viewed in the

---

1. Evidently adhering to "the adage that the best defense is a good offense," *Matter of Taxman Clothing Co.* 49 F.3d 310, 313 (7th Cir.1995), Thomson filed a lawsuit against his accusers in state court, just as he threatened to do in a letter delivered by his lawyer to his accusers shortly after the international union rejected his appeal.

light most favorable to the nonmovant. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party moving for summary judgment is entitled to a grant of summary judgment only if no issues of material fact remain for the trier of fact to determine at trial. *Id.* at 587, 106 S.Ct. 1348. A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. "Summary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return a verdict for that party." *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir. 1991).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. The nonmovant "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). *See O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 545 (4th Cir.1995), *rev'd on other grounds,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or deni-

als of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Shealy,* 929 F.2d at 1012.

### III. ANALYSIS

■ There is no diversity of citizenship between the parties. Consequently, Thomson's allegation that he may invoke this court's subject matter jurisdiction "as established by the Federal Arbitration Act," *see* Amended Complaint ¶ 1, is misplaced and he fails to allege a claim within the subject matter jurisdiction of this court. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also Southland Corp. v. Keating,* 465 U.S. 1, 15 n. 9, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) ("While the Federal Arbitration Act creates federal substantive law requiring the parties to honor arbitration agreements, it does not create any independent federal-question jurisdiction....").[2]

■ In truth, Thomson seeks to bring a "hybrid" claim for breach of the duty of fair representation, *see Hines v. Anchor Motor Freight,* 424 U.S. 554, 570–571, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), but without actually joining the union as a defendant. A union member is not required to name his or her union in such a

---

**2.** Apparently, Thomson seeks to assert a single claim on alternative theories, namely, the following: either (1) the collective bargaining agreement does not grant exclusive authority to his union to compel arbitration; or (2) even if it does so, he may nevertheless act independently to compel Verizon to engage in arbitration over his termination. The first of these contentions fails, both because, as mentioned in text, in the absence of diversity of citizenship, there is no basis for federal jurisdiction, and, as well, because the plain language of the collective bargaining agreement leaves no doubt that the union has the exclusive authority to invoke arbitration ("The Union, within fourteen days [after step two of the grievance process] may submit the grievance to arbitration." *See* Def.'s Mem. Supp. Mot. Summ. Jgmt. Exh. 1, at 18.).

case, but to avoid summary judgment, he or she must, of course, project evidence sufficient to demonstrate that the non-party union did indeed breach its duty of fair representation. Thomson has not projected such evidence here.

■ "[A]s the exclusive bargaining representative of the employees, ... [a] Union ha[s] a statutory duty fairly to represent all of those employees." *Vaca v. Sipes,* 386 U.S. 171, 176, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). A union, however, is granted a high degree of deference in pursuing its representation of employees, and thus, a union breaches its duty of fair representation only if its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190, 87 S.Ct. 903. Accordingly, mere negligence, poor judgment or inefficiency on the part of the union will not satisfy a claim for breach of the duty of fair representation. *See Smith v. United Steelworkers,* 834 F.2d 93, 95 (4th Cir.1987)(*citing Ash v. United Parcel Service,* 800 F.2d 409, 411 (4th Cir.1986)). There must be "substantial reason to believe that a union breach of duty contributed to an erroneous outcome in the contractual proceedings." *Ash,* 800 F.2d at 411 (*quoting Hardee v. North Carolina Allstate Serv. Inc.,* 537 F.2d 1255, 1258 (4th Cir.1976)).

■ These factors—arbitrariness, discrimination, and bad faith—have been interpreted in the context of a strong federal policy of granting unions a large measure of deference in representing employees. Thus, for example, a union's actions are considered arbitrary if "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' so as to be irrational." *Air Line Pilots Assoc. Int'l. (ALPA) v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991)(internal citation omitted). Similarly, a union's conduct is considered to be discriminatory if the union's actions are invidious. *See In re ABF Freight Sys., Inc.,* 988 F.Supp. 556, 563–64 (D.Md.1997). *See also Considine v. Newspaper Agency Corp.,* 43 F.3d 1349, 1359–60 (10th Cir.1994)("[D]iscrimination is invidious if based upon impermissible or immutable classifications such as race or other constitutionally protected categories, or arises from prejudice or animus."). Finally, bad faith can be established only "by a showing of fraud, or deceitful or dishonest action." *Id.* at 1361(*quoting Aguinaga v. United Food & Comm. Workers,* 993 F.2d 1463, 1470 (10th Cir.1993)). These standards create a high burden for a plaintiff to overcome, a hurdle created to ensure that a court does not "substitute its own view of the proper bargain for that reached by the union." *ALPA,* 499 U.S. at 78, 111 S.Ct. 1127. A union has no duty to pursue a grievance (or to continue a grievance process) that it believes lacks merit. *See, e.g., McLain v. Wilson,* 591 F.Supp. 474, 478 (D.Md.1984); *Shufford v. Truck Drivers, Helpers, Taxicab Drivers,* 954 F.Supp. 1080, 1087 (D.Md.1996) ("[A]n employee does not have an absolute right to have a grievance taken all the way through the arbitration process")(*quoting Vaca v. Sipes,* 386 U.S. at 191, 87 S.Ct. 903); *Smith,* 834 F.2d at 96 ("The Union, however, is entitled to refuse to process a grievance....").

■ As a matter of law, the evidence marshaled by Thomson shows, at the most, that the union local was negligent in its handling of his grievance. Thomson *admits* that he used profanity, although he denies that he used profanity "repeatedly." This is an argument only a lawyer could make under these circumstances. Appar-

ently, this admission is enough to have justified his discharge.

 More fundamentally, Verizon had direct statements from persons claiming first-hand knowledge of the facts surrounding the disputed visit to the postal facility, *including Thomson's fellow union member.* The union might reasonably have concluded that independent interviews with the witnesses would not have contributed materially to its ability to advance Thomson's grievance. Furthermore, the failure to interview the Postal Service representatives is not surprising; there was no suggestion that either of the two Postal Service representatives overheard any of Thomson's statements. In short, while Thomson is understandably displeased with what he no doubt perceives as the union's less-than-enthusiastic defense, under no reasonable interpretation of the circumstances can the union's handling of the grievance (and the concomitant decision to forego arbitration) be described as "arbitrary," "invidious," or "deceitful."

 Verizon also argues that Thomson's state-law claims for wrongful discharge and "invasion of privacy/false light defamation" are preempted by 29 U.S.C. § 185. "To ensure uniform interpretation of collective-bargaining agreements and to protect the power of arbitrators, [§ 185] has been found to 'displace entirely any state cause of action for violation of contracts between an employer and a labor organization.'" *Davis v. Bell Atlantic–West Virginia, Inc.,* 110 F.3d 245, 247 (4th Cir.1997)(*quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 23, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Not all state law claims are preempted by § 185; only those that require interpretation of the collective bargaining agreement for adjudication will be preempted by the federal law. *See McCormick v. AT & T Tech., Inc.,* 934 F.2d 531, 534 (4th Cir.1991), *cert. denied,* 502 U.S. 1048, 112 S.Ct. 912, 116 L.Ed.2d 813 (1992).

Manifestly, because any state law wrongful discharge claim would require an interpretation of the collective bargaining agreement, Thomson's ostensible wrongful discharge claim is preempted. *See, e.g., Jackson v. Southern Cal. Gas Co.,* 881 F.2d 638, 645(9th Cir.1989); *Saunders v. Amoco Pipeline Co.,* 927 F.2d 1154, 1156 (10th Cir.1991), *cert. denied,* 502 U.S. 894, 112 S.Ct. 264, 116 L.Ed.2d 217 (1991); *Mitchell v. Pepsi–Cola Bottlers,* 772 F.2d 342, 346(7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986).

On the other hand, the allegations underlying count IV, the "invasion of privacy/false light defamation" claim, are so obscure, I hesitate to conclude on this record that count IV is preempted. Verizon correctly notes that, to the extent any aspect of Thomson's employment termination figures in the "invasion of privacy/false light defamation" claim (frankly, it is not even clear whether it is one claim or more than one claim), there is certainly preemption. But a properly pled claim of "invasion of privacy" may well remain viable under prevailing preemption analysis.[3] Under the circumstances, in the absence of diversity of citizenship, I shall dismiss count IV, the "invasion of privacy/false light defama-

---

3. This is yet another in a growing series of cases pending before me in which the lawyer representing Thomson has seemingly gone to extraordinary lengths to obscure the nature and bases for the claims asserted.

tion" claim, without prejudice for lack of jurisdiction.

## IV. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment shall be granted in part and denied in part, and count IV shall be dismissed for lack of jurisdiction. An order follows.

## ORDER

For the reasons stated in the accompanying memorandum, it is this 3rd day of May, 2001, by the United States District Court for the District of Maryland, ORDERED

(1) That the defendant's motion for summary judgement is GRANTED IN PART AND DENIED IN PART and JUDGMENT IS ENTERED IN FAVOR OF DEFENDANT AS TO COUNTS I, II and III; and its is further ORDERED

(2) That COUNT IV IS DISMISSED WITHOUT PREJUDICE FOR LACK OF JURISDICTION; and it is further ORDERED

(3) That the Clerk shall CLOSE THIS CASE and TRANSMIT a copy of this Order and the foregoing Memorandum to counsel of record.