### In re ABF FREIGHT SYSTEM, INC., LABOR CONTRACT LITIGATION.

### MDL No. 1120.

United States District Court, D. Maryland.

Dec. 3, 1997.

Joseph S. Kaufman and Schulman & Kaufman, LLC, Baltimore, MD, for Gorge plaintiffs.

J. Bruce Maffeo and Seiff & Kretz, New York City, for Alverson and Mittelstadt plaintiffs.

John D. Corrigan and O'Malley & Harvey, Boston, MA, for Ryder plaintiffs.

Robert E. Ballard and Powell, Trachtman, Logan, Carrle, Bowman & Lombardo, P.C., King of Prussia, PA, for Kleiner plaintiffs.

Joseph E. Santucci, Jr., Alissa A. Horvitz and Morgan, Lewis & Bockius, LLP, Washington, DC, for defendant ABF Freight System, Inc.

James A. McCall, Washington, DC, for International Brotherhood of Teamsters defendants.

Steven K. Hoffman, James & Hoffman, P.C., Washington, DC, for defendant Teamsters Local 557.

ALEXANDER HARVEY, II, Senior District Judge.

In this multidistrict litigation, five civil actions have been coordinated and consolidated for pretrial purposes in this Court pursuant to 28 U.S.C. § 1407. *Gorge, et al. v. Carey, et al.,* Civil No. H–96–813, was filed in this Court on March 18, 1996. In that case, employees of ABF Freight System, Inc. ("ABF" or "the Company") sued the Company, the International Brotherhood of Teamsters (the "IBT" or the "International Union"), certain officers of the IBT and one of its Locals. As a result of certain corporate transactions which occurred in 1995 and which involved ABF, its parent and two competing trucking companies, the plaintiffs in *Gorge* were either laid off or lost their seniority. Plaintiffs in *Gorge* are members of Teamsters Local 557 of the IBT, and they have claimed in their complaint that defendant ABF breached the collective bargaining agreement between it and the IBT and that the IBT and Local 557 violated the duty of fair representation owed by them to their members under Section 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185. Besides ABF, the IBT and Local 557, the complaint named as additional defendants Ronald Carey, General President of the IBT and Dennis Skelton, International Vice President of the IBT. Defendant Carey serves with defendant Skelton as Co–Chairmen of the Teamsters National Freight Industry Negotiating Committee (the "TNFINC").

Similar suits had been or were later instituted by other employees of ABF against these same defendants in other federal courts.[1] *Mittelstadt, et al. v. Carey, et al.,* Civil No. 96–377, was filed in the Eastern District of New York in January of 1996. *Alverson, et al. v. ABF Freight System, Inc., et al.,* Civil No. 96–459, was instituted in the Northern District of New York in March of 1996. *Ryder v. International Brotherhood of Teamsters, et al.,* Civil No. 96–10577, was brought in the District of Massachusetts in March of 1996, and *Kleiner, et al. v. Carey, et al.,* Civil No. 96–4305, was instituted in the

---

1. Local 557 is a defendant only in the *Gorge* case. With this one exception, the defendants are the same in all five of the cases now pending in this Court.

Eastern District of Pennsylvania in June of 1996.

By Order dated July 29, 1996, the Judicial Panel on Multidistrict Litigation transferred the *Mittelstadt, Alverson* and *Ryder* cases to this District for coordinated or consolidated pretrial proceedings with the *Gorge* case pursuant to 28 U.S.C. § 1407. The cases were assigned to Judge Frank A. Kaufman of this Court. By later Order dated January 30, 1997, the Panel transferred the *Kleiner* case to this Court and assigned that case to Judge Kaufman for coordinated or consolidated pretrial proceedings with the other four actions.[2] In all five pending cases, the plaintiffs seek a judgment restoring their lost seniority rights as well as back pay, damages and other relief.[3]

Following a lengthy period of discovery, the parties have now filed dispositive motions. Presently pending in these consolidated cases are the following:

(1) The motion of the *Gorge* plaintiffs for partial summary judgment;

(2) The motion of defendant ABF for summary judgment;

(3) The motion for summary judgment of the International Union defendants;

(4) The renewed motion for summary judgment of defendant Local 557;[4]

(5) The motion for summary judgment of defendant ABF against the *Kleiner* plaintiffs on statute of limitations grounds; and

(6) The motion for summary judgment of the International Union defendants against the *Kleiner* plaintiffs on statute of limitations grounds.

The Court has now had an opportunity to consider the lengthy memoranda and the voluminous exhibits submitted by the parties in support of and in opposition to these six pending motions. A massive record has been presented to the Court and lengthy oral argument has been heard. For the reasons to be stated herein, the Court has concluded that the motion for partial summary judgment of the *Gorge* plaintiffs must be denied and that the motions for summary judgment of the International Union defendants, of defendant ABF and of Local 557 must all be granted.[5] Summary judgment accordingly will be entered in favor of all defendants in all five pending cases.

I

*Background Facts*

Defendant ABF is a multi-regional common carrier of freight. Its drivers, dock employees and certain other employees are represented by various local unions affiliated with the International Brotherhood of Teamsters. ABF and the local unions are parties to the National Master Freight Agreement ("NMFA"), which is a collective bargaining agreement governing the terms and conditions of employment for over 100,000 persons working nationwide in the unionized freight industry. The NMFA consists of an overall national agreement and thirty-two regional supplements.[6]

In July of 1995, Arkansas Best Corporation ("ABC"), the parent of defendant ABF, decided to acquire all of the outstanding stock of WorldWay, Inc. ("WorldWay"). A holding company known as ABC Acquisition Corp. was then created, and the outstanding stock of WorldWay was acquired by the hold-

---

**2.** The *Alverson* case has now been docketed in this Court as Civil No. H–96–2461; the *Mittelstadt* case as Civil No. H–96–2703; the *Ryder* case as Civil No. H–96–2779, and the *Kleiner* case as Civil No. H–97–729.

**3.** Following Judge Kaufman's death, all five cases have been reassigned to the undersigned.

**4.** Earlier motions for summary judgment of Local 557 filed in the *Gorge* case before the completion of discovery were dismissed as moot.

**5.** Since the Court has concluded that summary judgment on the merits should be granted in favor of all defendants in the *Gorge, Alverson, Mittelstadt* and *Ryder* cases and since similar principles require the entry of summary judgment in favor of all defendants in the *Kleiner* case, it is not necessary for the Court to address defendants' additional motions for summary judgment filed in that case and based on statute of limitations grounds.

**6.** The current NMFA became effective in 1994 and expires on March 31, 1998.

ing company. WorldWay was the parent of Carolina Freight Carriers Corporation ("Carolina") and Red Arrow Freight Lines ("Red Arrow"), and steps were undertaken after ABC had acquired the stock of WorldWay to merge the operations of ABF, Carolina and Red Arrow.[7] On August 11, 1995, the Interstate Commerce Commission granted ABC limited authority to operate these three corporate entities on a consolidated basis. When the stock purchase transaction had been announced in July of 1995, ABC and ABF had informed IBT of their intention to combine freight operations of the three subsidiary corporations and close various terminals. As a result, questions arose concerning the seniority of employees of the three ABC subsidiaries. Under the NMFA, the combining of operations and the closing of terminals could not be accomplished until ABF had secured union approval for these changes.

There were two possible approaches which ABF and the International Union could take for determining the seniority of the employees of the three merged companies. Employees of all companies could be "dovetailed" so that the seniority of each employee would be recognized based on the employee's date of hire and without regard to the corporate entity which had previously been the employer. The other possible approach was to "endtail" the various employees of the newly merged corporate entities, giving priority to the employees of ABF and placing Carolina and Red Arrow employees below the ABF employees on the assimilated seniority list. The decision eventually reached under the NMFA and its regional supplements was that all employees of the affected operating companies would be dovetailed. As a result, many employees of ABF were laid off or have been accorded less seniority than employees of Carolina. In these five civil actions, the plaintiffs claim that ABF breached the NMFA and that the IBT and Local 557 violated their duty of fair representation by not requiring that employees of Carolina be endtailed.[8]

Detailed provisions of the NMFA address the manner whereby the unions and management in the industry are required to resolve issues of seniority arising as a result of the combining of the operations of several signatory companies. If an entity is a party to a merger, the seniority of affected employees is to be determined by agreement between the employer and the unions involved. If terminals or operations of two or more companies are combined, the effects of the change must be considered and approved by a Change of Operations Committee. ABF accordingly requested the appointment of a Change of Operations Committee (the "Committee") to conduct a hearing and determine whether employees of the various merged entities should be dovetailed or endtailed. The Committee was then formed, consisting of three union representatives from each of the regions where ABF operated and three employer representatives, none of whom was an ABF employee.

Hearings before the Committee were held on September 14 and 15, 1995 in Rosemont, Illinois. Each local union affected by the proposed change of operations was given an opportunity to be heard before the Committee.[9] The key issue for decision by the Committee was whether the seniority of the various affected employees should be determined by a dovetailing approach or by an endtailing approach. ABF had advanced a modified endtailing proposal based on a so-called "follow-the-work" principle. Officials of the IBT consistently supported dovetailing, claiming that such a result would be a fairer approach. Some of the local unions agreed with ABF's proposal while others implored the Committee to dovetail the seniority list. Local 557 represented both employees of ABF and employees of Carolina. The position of defendant Local 557 was presented by John D. Clemens, Jr., its President. Since some of the members of Local 557 would be benefited

---

7. Both Carolina and Red Arrow, as well as ABF, were signatories to the NMFA. ABC, its acquiring subsidiary and WorldWay were not.

8. Since Red Arrow operated exclusively in the southwestern part of the United States, the plaintiffs who are all located in ABF's eastern region were not affected by that company's merger with ABF and Carolina.

9. Representatives of some 160 affected locals presented their views at the hearing.

by a dovetailing approach while others would receive the benefits of endtailing, Clemens took no position on the issue. Rather, he referred the Committee to provisions of the NMFA which required dovetailing in the event of a merger and endtailing in the event of an acquisition, stating that the "issue of dovetail or endtail remains within the confines of this Committee and we know your decision will be a fair one.".

The hearings were concluded at 10:00 p.m. on Friday, September 15, 1995.[10] The Committee then went into executive session to consider the position espoused by ABF and certain local unions and that endorsed by various officials of the IBT and other local unions. Joining the Committee in these discussions were defendant Skelton, the International Vice President of the IBT and his assistant Chuck Piscitello. The first draft of a proposed decision called for a dovetailing of the affected employees. Discussions continued until 1:30 a.m. on September 16, during which time the employer representatives continued to argue in favor of a modified endtail plan. Discussions were resumed during the executive session at 8:00 a.m. on the morning of Saturday, September 16, at which time representatives of ABF modified their proposal and suggested endtailing in some areas and dovetailing in others. However, the union members of the Committee continued to support uniform dovetailing. When no final decision could be reached, the Committee adjourned during the afternoon of Saturday, September 16 and agreed that discussions would resume by telephone on Monday, September 18. On that day, the union members of the Committee submitted a new draft decision. It was discussed by telephone and was transmitted by facsimile to the Committee's members. Following a further modification of the union's draft proposal on September 19, the employer members of the Committee finally approved this third draft and agreed to what was essentially a dovetailing approach. That same day, the Committee issued its unanimous decision which ordered the dovetailing of employees of ABF, Carolina and Red Arrow. In its written decision which was immediately forwarded to

the principal officers of the many local unions, the Committee stated that the change of operations in question involved a transaction within the meaning of Article 5, Section 2(a)–(c) of the NMFA and that in accordance with Article 5, Sections 2(a)–(c) and 3 and Article 8, Section 6(g) of the NMFA "the seniority lists at domiciles and terminals affected by the change of operations shall be grouped for dovetailing...."

On September 20, 1995, the Board of Directors of ABC approved articles of merger for the combination of ABF, Carolina and Red Arrow. Since the Committee's decision was binding on it under the NMFA, ABF on September 25, 1995 implemented the order of the Committee and began to operate its transportation system by utilizing the dovetailed seniority lists. Various terminals of Carolina were closed, and a number of ABF employees were laid off.

Between September and December of 1995, several plaintiffs and other employees of ABF who had been laid off filed unfair labor practice charges against ABF and IBT with the National Labor Relations Board (the "NLRB"). Plaintiff Gorge filed such a charge with the Regional Director in Baltimore who refused to issue a complaint on the ground that the dovetailing decision had been made pursuant to provisions of the NMFA and that no unfair labor practice had resulted. The NLRB Office of the General Counsel denied an appeal from this ruling. Other charges filed by other employees of ABF were similarly dismissed by the NLRB.

A number of ABF employees, including several plaintiffs, filed grievances with the IBT which in effect requested that the Committee reconsider its dovetailing decision. The Committee, which had retained jurisdiction to hear grievances arising out of its September 19 decision, met again on December 12, 1995 to address these grievances. After hearing the presentation of only one of these grievances, the Committee, in executive session, denied it and ruled that all other similar grievances would also be denied. In denying the one grievance, the Committee concluded that its September 19 decision was not reviewable because it was final and bind-

---

**10.** The transcript of the hearing before the Committee is some 934 pages in length.

ing under the NMFA and that the Committee would not undertake to consider any of the other employees' grievances because reconsideration of them would also not be allowed.

Within six months of the Committee's September 19, 1995 decision, plaintiffs filed their complaints in the *Gorge, Ryder, Alverson* and *Mittelstadt* cases. The *Kleiner* plaintiffs did not file suit until June 11, 1996.

## II

### Summary Judgment Principles

It is well established that a party moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

One of the purposes of Rule 56 of the Federal Rules of Civil Procedure is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and properly supported, to come forward with some minimal facts to show that a defendant may be liable under the claims alleged. *See* F.R.Civ.P. 56(e). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then "the plain language of Rule 56(c) mandates the entry of summary judgment." *Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552.

While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). " 'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick,* 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 640 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967), *cert. denied,* 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). Moreover, only disputed issues of *material* fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In the absence of the necessary minimal showing by a plaintiff that the defendant may be liable under the claims alleged, the defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. *See Catrett,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53; *Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514–15. Indeed, the Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (quoting *Catrett,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53).

Applying these principles to the facts of record here, this Court has concluded that the motion for partial summary judgment of plaintiff Gorge must be denied and that defendants' motions for summary judgment must be granted.

## III

### The Claims

In each of the complaints which they have filed in these five cases, the plaintiffs have asserted claims against ABF, the IBT, Ronald Carey and Dennis Skelton. In *Gorge,* similar claims have also been asserted against Local 557.

Plaintiffs contend (1) that defendant IBT breached its duty of fair representation owed to employees of ABF; (2) that since defendant IBT violated its duty of fair representation by causing the contractual process to be seriously flawed, defendant ABF must share liability with IBT; and (3) that defendants Carey and Skelton likewise owed the plaintiffs a duty of fair representation .and are also liable to plaintiffs in these five cases. In *Gorge,* plaintiffs claim in addition that Local 557 breached its duty of fair representation owed to the employees of ABF.

Plaintiffs' briefs and arguments present a host of theories under which they seek recompense from defendants for the loss of their seniority rights which occurred when the operations of ABF· and Carolina were combined. Extensive discovery has been undertaken by the parties in this case, and a massive record has been presented to the Court. However, plaintiffs' claims are ripe for adverse summary judgment determinations because they are "based upon [theories] without proof." *Hinkle v. City of Clarksburg,* 81 F.3d 416, 423 (4th Cir.1996).

This case presents the classic factual scenario whereby a union's decision concerning a seniority issue will benefit some of its members and disadvantage others. Conflict between employees represented by the same union is "a recurring fact." *Humphrey v. Moore,* 375 U.S. 335, 349–50, 84 S.Ct. 363, 371–72, 11 L.Ed.2d 370 (1964). In this case, the NMFA established a procedure whereby the conflicting interests of various members of the local unions could be considered and resolved. The procedure itself was a fair one, and the ultimate decision was reached by the Committee, composed of an equal number of union and management persons, in full compliance with applicable contractual provisions. Plaintiffs' position in this case is that members of Carolina with more seniority than they have should have been laid off rather than the plaintiffs. This proposed solution for the conflict between members of the same union was considered by the Committee and rejected.

On the record here, the Court concludes as a matter of law that the IBT and Local 557 did not breach the duty of fair representation owed by them to the plaintiffs. Nor are there facts in this record indicating that defendant ABF breached the collective bargaining agreement between it and affiliated unions of the IBT. Moreover, defendants Carey and Skelton as officers of the IBT are not subject to suit for allegedly violating a duty of fair representation owed by them to the plaintiffs. Since no issues of material fact are presented by the record here, summary judgment in favor of all of the defendants will be entered in all five cases.

IV

*Claims Against Defendant IBT*

It is well established that a union, as the exclusive bargaining representative, has a statutory duty to represent all members of its bargaining unit fairly, both in collective bargaining and in the enforcement of the resulting collective bargaining agreement. *See, e.g., Humphrey,* 375 U.S. at 342, 84 S.Ct. at 367–68; *Ford Motor Co. v. Huffman,* 345 U.S. 330, 337, 73 S.Ct. 681, 685–86, 97 L.Ed. 1048 (1953). To establish that a union has breached its duty of fair representation, a member of the bargaining unit must prove that the union's conduct toward him or her was "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). The primary purpose of the law's imposition of this duty of fair representation is to ensure that bargaining unit members "not be deprived of all effective means of protecting their· own interests." *Aguinaga v. United Food and Commercial Workers Int'l Union,* 993 F.2d 1463, 1471 (10th Cir.1993), *cert. denied,* 510 U.S. 1072, 114 S.Ct. 880, 127 L.Ed.2d 75·(1994).

A union's conduct will be considered "arbitrary" only if "in the light of the factual and legal landscape at the time of the union's actions, the union's behavior [was] so far outside a 'wide range of reasonableness,' as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 66, 111 S.Ct. 1127, 1129, 113 L.Ed.2d 51 (1991) (quoting *Huffman,* 345 U.S. at 338, 73 S.Ct. at 686). To prove that a union's conduct was discriminatory, a plaintiff must establish that the

union's actions were "invidious." 449 U.S. at 81, 101 S.Ct. at 305–06. Moreover, "bad faith" may be established only by a showing of fraud, or deceitful or dishonest action. *International Union of Elec. Workers v. NLRB,* 41 F.3d 1532, 1537 (D.C.Cir.1994). From these authorities, it is apparent that a plaintiff alleging a breach of the union's duty of fair representation faces a heavy burden in seeking to establish that a union's actions were arbitrary, discriminatory, or conducted in bad faith.

The principal contention advanced by plaintiffs in this case is that IBT acted arbitrarily and contrary to controlling contractual provisions in deciding that employees of ABF and employees of Carolina should be dovetailed. In order that a union may have appropriate latitude in its manner of operation, the test for determining whether particular conduct is arbitrary "can be quite forgiving." *Garcia v. Zenith Elec. Corp.,* 58 F.3d 1171, 1176 (7th Cir.1995). In reviewing union conduct, a court must recognize the broad discretion of a union "in treating competing interests of members of the bargaining unit." *Smith v. Local 7898, United Steelworkers,* 834 F.2d 93, 96 (4th Cir.1987). A union is entitled to act within a wide range of reasonableness, and a court should not substitute its own judgment for that of the union. *Considine v. Newspaper Agency Corp.,* 43 F.3d 1349, 1357 (10th Cir.1994).

Accordingly, liability for a breach of the duty of fair representation based on a union's arbitrary behavior will be imposed only if the union's actions were wholly unreasonable. In ruling on defendants' motions for summary judgment, this Court must determine whether plaintiffs have presented at this stage of the proceedings sufficient evidence to allow a reasonable jury to conclude that the union's actions were "so far outside a 'wide range of reasonableness' as to be irrational." *See O'Neill,* 499 U.S. at 66, 111 S.Ct. at 1129.

In seeking to establish that conduct of IBT and Local 557 was wholly unreasonable under the circumstances here, plaintiffs' principal reliance is on provisions of the area supplements which suggest that there should

be endtailing in the case of an acquisition and dovetailing where a merger has occurred. Article 5, Section 1(a) of the NMFA provides that the "application of seniority which has been accrued herein shall be established in the Supplemental Agreements." Although other language of the NMFA conflicts with Article 5, Section 1(a), plaintiffs argue that the Committee was thereby contractually required to apply provisions of the area supplements and order endtailing because an acquisition was involved here.

First of all, even if conflicting provisions of the NMFA and of the area supplements could properly be construed as mandating that the Committee order endtailing if there has been an acquisition, this Court concludes that, under the circumstances here, the combining of the operations of ABF and Carolina resulted from a merger rather than from an acquisition. Thus, even if provisions of the area supplements were controlling (and the Court has concluded that they are not), the Committee reached a decision permitted by the contractual language relied upon by the plaintiffs in this case. There was indeed an acquisition of the stock of ABC's competitor WorldWay by a subsidiary of the parent of ABF. However, that acquisition was followed by the later merger of WorldWay's subsidiaries Carolina and Red Arrow with ABC's subsidiary ABF. After the acquisition was completed on August 11, 1995, the three subsidiaries continued to operate independently for some six weeks. Operations of the three companies were not actually combined until September 25, 1995. The injuries allegedly sustained by the plaintiffs in this case were therefore proximately caused by the merger of these subsidiaries and not by the earlier stock acquisition.

In any event, when provisions of the NMFA and of the area supplements are considered in their entirety, this Court is satisfied that applicable language of the NMFA supersedes that of the area supplements and is here controlling. Both the NMFA and the area supplements contain language subordinating provisions of the area supplements to those of the NMFA. Article 2, Section 2(a) of the NMFA provides that, "All ... Supplemental Agreements are subject to and con-

trolled by the terms of this Master Agreement...." Moreover, the preamble to many of the area supplements provides that the "Master Agreement shall prevail over the provisions of this Supplement in any case of conflict between the two...."

Article 2, Section 4 of the NMFA provides that all employees, unions, employers and associations covered under the Master Agreement and the various supplements "shall constitute one (1) bargaining unit and contract." Article 5, Section 2 deals specifically with mergers of companies. Under Section 2(a), it is "immaterial whether the transaction is called a merger, purchase, acquisition, sale, etc." Under Section 2(b), if a merger of companies results in the combination of terminals or over-the-road operations, the change of operation in question must be submitted "to an appropriate Change of Operations Committee established pursuant to Article 8, Section 6." Section 2(c) of Article 5 prescribes general rules to be followed by the employer and the local unions in the event that terminals or operations of two or more companies are combined as a result of a merger. Section 2(c)(1) specifically requires the dovetailing of active seniority rosters under these circumstances, and under Section 2(c)(2) dovetailing is also required for inactive seniority rosters.

Article 8, Section 6 deals with "Change of Operations." Under Section 6(a), terminals may not be transferred, changed or modified without the approval of a Change of Operations Committee which is to be equally composed of employer and union representatives. Section 6(a) also provides that the Committee's determination of the seniority of employees affected by a transfer or change of terminals "shall be final and binding." Pursuant to Section 6(d), the Change of Operations Committee is given "the sole authority to determine questions of the application of seniority in those situations presented to it...."

Article 8, Section 6(g) provides as follows: The parties acknowledge that the above rules are intended solely as general standards and further that many factual situations will be presented which necessitate different applications, modification or amendment. Accordingly, the parties acknowledge that questions of the application of seniority rights may arise which require different treatment and it is anticipated and understood that the Employers and Unions jointly involved and/or the respective grievance committees may mutually agree to such disposition of questions of seniority which in their judgment is appropriate under the circumstances.

The Change of Operations Committee, as provided herein or in the Supplemental Agreements, shall have the authority to determine the application of seniority in those situations presented to them. In all cases, the seniority decisions of the joint committees, including the Change of Operations Committees and subcommittees established by the National Master Freight Agreement and the respective supplemental agreements, *shall be final and binding.* (Emphasis added).

In view of these detailed provisions of the NMFA, this Court concludes that Article 5, Section 1(a) and provisions of the regional supplements did not require the Committee to order that the seniority issue before it be resolved by way of endtailing rather than dovetailing. Indeed, the provisions of the regional supplements relied upon by plaintiffs do not specifically discuss means whereby seniority can be determined when operations of signatory companies are merged. Provisions of the NMFA deal with that subject in some detail. Under Sections 2(a) and 2(c) of Article 5, whenever terminals or operations of two or more signatory companies are combined, the active employee seniority rosters must be dovetailed without regard to whether the transaction in question is called a merger or an acquisition. A change of operations committee is not bound by "the legal terminology that would be binding on courts" in a merger or acquisition situation. *Morris v. Werner–Continental, Inc.,* 466 F.2d 1185, 1191 (6th Cir.1972), *cert. denied,* 411 U.S. 965, 93 S.Ct. 2144, 36 L.Ed.2d 685 (1973).

This Court concludes that, under the circumstances here, the Committee had the contractual right to reach the decision which it did. The procedure mandated was a fair

one, and the Committee's ultimate decision was reached after two days of hearings and several additional days of discussion and debate. It was the Committee which was charged with the responsibility for resolving any conflict between provisions of the NMFA and those of the regional supplements. This Court concludes that it was entirely proper for the Committee to decide, in applying the contractual language at issue, that dovetailing was appropriate under the circumstances here.

Even if this Court were to disagree with the ultimate decision reached by the Committee, plaintiffs would still not be entitled to prevail in this case. In *Morris,* the Sixth Circuit disagreed with the decision reached by a union grievance committee that the combining of two trucking companies was a "purchase" rather than a "merger." 466 F.2d at 1191. Nevertheless, the Court concluded that the decision of the Joint Committee was final and binding and that a reviewing court was powerless to intervene so long as the proceedings had been fairly conducted. *Id.* at 1190–91. *See also Mangum v. International Bhd. of Teamsters,* Civ. No. 90–2871–4, slip op. at 8 (W.D.Tenn. Order of June 17, 1992) (court declined to interfere with committee's determination that the transactions constituted a merger for purposes of dovetailing under Article 8, Section 6 of the NMFA).

Evidence has not been presented in this case indicating that the conduct of defendant IBT toward the plaintiffs was arbitrary, discriminatory or in bad faith. A reasonable jury would not be entitled to conclude on this record that the IBT's actions, even if erroneous, were so far outside a wide range of reasonableness as to be irrational. *O'Neill,* 499 U.S. at 67, 111 S.Ct. at 1129–30. Moreover, plaintiff cannot on this record show that the IBT's actions were invidious. *Id.* at 81, 111 S.Ct. at 1137. Nor is there any evidence here of fraud or deceitful or dishonest action. *See International Union of Elec. Workers,* 41 F.3d at 1537.

Case law has recognized that dovetailing is an appropriate and fair way to resolve the problem presented when seniority rights are affected by the combining of the operations

of two or more companies which are signatories to a collective bargaining agreement. Some thirty years ago, the Supreme Court was presented in *Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), with a claim that a joint employer-employee committee impermissibly dovetailed employees when one freight carrier absorbed the work of another. The Supreme Court concluded that the Joint Conference Committee was entitled "to integrate the seniority list upon some rational basis, and its decision to integrate lists upon the basis of length of service at either company was neither unique nor arbitrary." *Id.* at 347, 84 S.Ct. at 370–71. The Court went on to say the following:

> On the contrary, [dovetailing] is a familiar and frequently equitable solution to the inevitably conflicting interests which arise in the wake of a merger or an absorption such as occurred here....

> Inevitably, the absorption would hurt someone. By choosing to integrate seniority lists based upon length of service at either company, the union acted upon wholly relevant considerations, not upon capricious or arbitrary factors.

*Id.* at 347, 350, 84 S.Ct. at 370, 372.

In *Ekas v. Carling Nat'l Breweries, Inc.,* 602 F.2d 664, 668 (4th Cir.1979), *cert. denied,* 444 U.S. 1017, 100 S.Ct. 669, 62 L.Ed.2d 646 (1980), the Fourth Circuit held that dovetailing offers an "eminently reasonable method of resolving competing seniority claims." *See also Smith v. B & O R.R. Co.,* 485 F.Supp. 1026, 1029 (D.Md.1980); *Wheeler v. Bhd. of Locomotive Firemen & Enginemen,* 324 F.Supp. 818, 825–27 (D.S.C.1971); and *Safely v. Time Freight, Inc.,* 307 F.Supp. 319, 326 (W.D.Va.1969), *aff'd. per curiam,* 424 F.2d 1367 (4th Cir.1970).

Plaintiffs also argue that the IBT violated its own Constitution when the Committee chose to disregard provisions of the area supplements. Article XII, Section 2(b) of the IBT Constitution provides that no "special supplement or rider may contain provisions which are inferior to comparable provisions in the Master Agreement of which the supplement or rider is a part." According to plaintiffs, the Committee's decision violated this provision of the IBT Constitution be-

cause the Committee improperly ruled that the area supplements were "inferior" to the NMFA.

There is no merit to this argument. The provision of the IBT Constitution in question has little applicability to the issues in this case. A union is not entitled to alter the terms of a negotiated collective bargaining agreement by amending its constitution. As the Court pointed out in *NLRB v. Electra–Food Mach., Inc.,* 621 F.2d 956, 958 (9th Cir.1980), internal union matters, including the provisions of a union's constitution, cannot affect the validity of a collective bargaining agreement. Moreover, it is apparent from other provisions of the IBT Constitution that the "inferior" provisions mentioned in Section 2(b) relate to employment benefits like wages, hours or working conditions, and are not intended to prohibit any determination by a change of operations committee that provisions of the Master Agreement supersede language to the contrary in an area supplement.

Plaintiffs further argue that defendant IBT breached its duty of fair representation by depriving employees of the ABF of their procedural right to grieve the merits of the decision reached by the Committee. There is no support in the record here for this contention. Plaintiffs and other employees of ABF did file grievances which requested that the Committee reconsider its dovetailing decision. The Committee met on December 12, 1995 and heard argument in support of one of these grievances. After meeting in executive session, the Committee by unanimous vote denied this grievance and ruled that all other similar grievances would also be denied. It was not arbitrary or wholly unreasonable for the Committee to act as it did. The NMFA specifically provides that the Committee's determination of the seniority of employees affected by a transfer or change of terminals shall be "final and binding."

Rulings made by the NLRB support the decision reached by the Committee. Charges of unfair labor practices filed by some of the plaintiffs in various jurisdictions were unsuccessful. Regional Directors in various Regions of the NLRB refused to issue complaints, and appeals to the Office of the General Counsel were denied based on determinations that there had been no breach of the duty of fair representation by the IBT when the Committee ordered that employees of ABF and Carolina be dovetailed.

Other contentions of plaintiffs likewise lack merit. It is argued that defendant Skelton was improperly present at executive sessions of the Committee, that the Committee's decision was "predetermined," that Skelton "coerced" the Committee and that its decision was motivated by bad faith and ill will. Evidence of record does not support these assertions. No ill will or improper motive has been shown by plaintiffs. It was permissible and customary for Skelton, other TNFINC officials and also employer representatives to be present at and to participate in executive sessions of a change of operations committee formed under the NMFA. IBT officials can hardly be faulted for espousing a position which various courts have recognized as being fair and equitable in circumstances like those present in this case. That IBT officials consistently supported dovetailing is clear. But there is an absence of evidence that the Committee's decision was predetermined. On the contrary, it was only after several drafts of the final decision had been circulated, discussed and debated over a period of several days and after the employer representatives had eventually agreed to dovetailing that the final decision was ultimately reached. No coercion or undue influence by IBT officials has been shown to have affected the Committee's decision. Indeed, the plaintiffs have recognized that ABF had the "option" of approving either dovetailing or endtailing.

At a meeting held with officials of ABF on August 21, 1995 well before the Committee hearings, Skelton objected to the modified endtailing proposal which ABF indicated it would support. Skelton and other union officials were at all times well aware of the adverse effect which dovetailing would have on many union members. However, they believed that the fairer approach for all members of IBT locals was to adjust seniority lists based on each employee's length of

service. As Skelton explained after the Committee had reached its final decision:

> This corporate merger puts the workers in the toughest situation. Either way you go—dovetailing or endtailing—the merger is going to cause tremendous pain for Teamster freight members.
>
> But seniority is the heart of a Union contract. We had to take the position to enforce the contract rights in the NMFA.

Plaintiffs also claim that the Committee's decision was a "political" one. No more than speculation and conjecture support plaintiffs' conclusory assertion that the decision ultimately reached was politically inspired in an effort to reward a union official whose support played a critical role in the reelection of defendant Carey. Nor does the evidence indicate that the Committee's decision represented a payback to Carolina for what occurred during a 1994 freight industry strike when Carolina was permitted to continue its trucking operations. A party opposing a motion for summary judgment is not entitled to create a dispute of material fact "through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985).

For all these reasons, the Court concludes that the motion for summary judgment of defendant IBT must be granted and that summary judgment in favor of defendant IBT must be entered in all five of the pending cases.[11]

## V

### *Claims Against Defendant ABF*

In seeking recoveries against defendant ABF in these cases, plaintiffs first contend that ABF should share liability with defendant IBT because it failed to protect its employees by deadlocking the proceedings before the Committee and forcing the matter to an arbitrator for a ruling. Second, plaintiffs contend that because defendant IBT violated its duty of fair representation and

thereby caused the contractual process to be seriously flawed, ABF should share responsibility for the losses sustained by plaintiffs. These contentions are meritless.

No breach of contract by defendant ABF has been shown by the plaintiffs. ABF cannot be found to have violated the NMFA by complying with a decision reached by the Committee. As the Fourth Circuit held in *Robinette v. Teamsters Local 29,* 822 F.2d 469 (4th Cir.1987), an employer like its employees in the union is bound by a determination of seniority issues made by a change of operations committee. *Id.* at 471–72. Here, ABF did no more than abide by the terms of the NMFA when it implemented the final decision of the Committee.

Valuing the loyalty of its employees, ABF indeed wished to retain as many of them as possible and accordingly vigorously advocated its proposal for a modified endtailing plan. The President and Chief Executive Officer of ABF was sympathetic to the concerns of many ABF employees that they would lose their jobs and so stated in a letter to the wife of plaintiff Gorge. However, after the Committee had been deadlocked on the issue for several days, ABF eventually changed its position for economic reasons. Until the seniority dispute could be resolved, the operations of ABF and Carolina could not be combined and duplicative terminals could not be closed. Because of the impasse, ABF was losing some $500,000 a day. Under the circumstances, there was no breach of the NMFA when industry members of the Committee finally relented and went along with ABF"s decision to accept dovetailing.

As the Court has herein determined in Part IV of this Opinion, defendant IBT did not violate its duty of fair representation owed to the plaintiffs. Since the Court has determined that the contractual process was not seriously flawed and that defendant IBT cannot be found to be liable to plaintiffs under 29 U.S.C. § 185, plaintiffs' contention

---

11. In view of the Court's determination of the other issues in this case, it is not necessary to address IBT's alternative contention that it is

entitled to summary judgment because IBT is not a signatory to the NMFA or the area supplements.

that defendant ABF should share liability with IBT must also fail.

For these reasons, summary judgment will also be entered in favor of defendant ABF in all five of the pending cases.

## VI

### Claims Against Defendants Carey and Skelton

At the time of the matters in suit, defendant Carey was President of the IBT and defendant Skelton was a Vice President and also National Freight Director. Both Carey and Skelton served as co-chairmen of the TNFINC, and they have been sued as individuals in all five cases.

▮ Plaintiffs' claims against defendants Carey and Skelton must fail. Under the LMRA, money judgments sought for breach of the duty of fair representation are enforceable only against the union as an entity and its assets, and such judgments are not enforceable against any individual union member and his assets. 29 U.S.C. § 185(b). This provision has been consistently construed by various courts as affording immunity to union officers for breach of the duty of fair representation. *See e.g., Felice v. Sever,* 985 F.2d 1221, 1231 (3d Cir.1993) (citing *Evangelista v. Inlandboatmen's Union,* 777 F.2d 1390, 1400 (9th Cir.1985)); *Montplaisir v. Leighton,* 875 F.2d 1, 4 (1st Cir.1989).

Citing *Shea v. McCarthy,* 953 F.2d 29 (2d Cir.1992), plaintiffs contend that individual union officials may be sued under the LMRA. In *Shea,* it was held that a union official may be subject to liability for violating a union's constitution but only insofar as the plaintiff has sought equitable relief against such an individual. In the five pending cases, equitable relief against defendants Carey and Skelton has not been specifically requested and could not be granted under the circumstances here. Plaintiffs have asked that defendants be directed to endtail the Carolina employees and to award plaintiffs back pay and related benefits. Obviously, only defendant IBT could be ordered to take those steps.

Accordingly, summary judgment will also be entered in favor of defendants Carey and Skelton in all five cases.

## VII

### Claims Against Local 557

▮ In only the *Gorge* case has Local 557 been named as one of the defendants. The plaintiffs in *Gorge* contend that Local 557 breached its duty of fair representation owed to them. According to plaintiffs, Local 557 did not properly represent them before the Committee when it failed to advocate and honor terms of the Maryland–District of Columbia Area Supplement.

What plaintiffs overlook is the fact that there were employees of ABF and also employees of Carolina who were members of Local 557. Had representatives of Local 557 advocated endtailing as plaintiffs contend, Local 557 would not have been properly representing the interests of its members who were employed by Carolina. Recognizing this dilemma, Clemens, who was then the President of Local 557, took a neutral position before the Committee. He referred the Committee to provisions of both the NMFA and the applicable regional supplement and merely stated that determination of the issue was one for the Committee to make.

The conduct of Local 557 under the circumstances here was reasonable. The plaintiffs in *Gorge* argue that Clemens should have insisted on endtailing, a position which would have ignored the seniority rights of employees of Carolina. However, as the First Circuit observed in *Ayala v. Union de Tronquistas,* 74 F.3d 344, 346 (1st Cir.1996), a local union "caught in the middle of dueling employees" is not obliged "to throw some union members to the wolves to placate others." Even if Local 557 had advocated endtailing, there is no indication in the record here that the Committee's decision would have been any different. There has thus been no showing by plaintiffs that it was the conduct of Local 557 which caused them harm.

As the Court has concluded hereinabove, provisions of the NMFA supersede language to the contrary contained in regional supple-

ments.[12] Any conflict between the two documents was for the Committee to resolve. Moreover, it was not arbitrary for the Committee to refuse to hear the grievance of the *Gorge* plaintiffs based on its determination on December 12, 1995 that its previous decision was final and binding.[13] On the record here, it cannot be said that the challenged actions of Local 557 were so far outside a wide range of reasonableness as to be irrational. This Court accordingly concludes that Local 557 did not breach the duty of fair representation which it owed to the plaintiffs.

For the reasons stated, the renewed motion for summary judgment of defendant Local 557 in the *Gorge* case will be granted.

## VIII

### Claims in the Kleiner Case

No motion for summary judgment addressing the merits has been filed in the *Kleiner* case either by defendant ABF or by the International Union defendants. However, defendant ABF and the International Union defendants have filed motions for summary judgment in that case on statute of limitations grounds.

In view of the discovery undertaken in these cases and the extensive record before the Court, it is apparent that the material facts and the applicable law are the same in the *Kleiner* case as in the other four cases. For the reasons stated in this Opinion, the Court has concluded that defendant ABF and the International Union defendants are also entitled to the entry of summary judgment in their favor in the *Kleiner* case. The pending motions for summary judgment based on statute of limitations grounds will therefore be denied without prejudice as moot.

## IX

### Conclusion

Since defendants' motions for summary judgment are being granted and since summary judgment in favor of all defendants is being entered in all five cases, plaintiffs' motion for partial summary judgment filed in the *Gorge* case will be denied. An appropriate Order will be ended by the Court.

12. In any event, the Maryland–District of Columbia Regional Supplement can be fairly read as mandating dovetailing under the circumstances here. Pursuant to Article 53, Section 7(b), endtailing is appropriate where "one Company acquires or purchases control of the business of another Company...." However, it was ABC, a non-signatory, which purchased WorldWay, another non-signatory. Under Section 7(a), dovetailing is appropriate when "two or more companies merge their operations...." It is the latter event which in fact occurred and which involved

two signatory companies which were bound by provisions of the NMFA and the regional supplements.

13. There is no merit to the further contention of the *Gorge* plaintiffs that Local 557 breached its duty of fair representation when the Maryland/DC Regional Committee concluded at its meeting in Hagerstown, Maryland on February 28, 1996 that it lacked jurisdiction to hear their grievances.